SANDLER, HARRY N„ Associate Judge.
The appellee, Florida National Bank of Jacksonville, a corporation, as Administrator, c.t.a./d.b.n., of the estate of Allie M. Harvey, deceased, on March 16, 1956, filed its complaint against the appellant as defendant claiming the sum of $38,134.85 as principal and interest due the estate as of the 28th day of December, 1950. Among the assets of the estate was a note, and mortgage dated December 9, 1947, in the principal sum of $60,000, of which it was claimed there was a balance of $20,064.37 due for principal and interest, and another note and mortgage on which there was due the sum of $18,070.48, both notes being secured by mortgages on real estate in Dade County, Florida, and payable to one Riley A. Gwynn, then the executor of said estate. It is charged in the complaint that on December 28, 1950, Gwynn was individually and personally indebted to the defendant in the sum of $19,881.71 and that on the said date, to-wit, December 28, 1950, Gwynn as executor, without authority and in violation and in breach of his fiduciary obligation as executor aforesaid, and in fraud of the rights of the legatees under the will of the decedent, did enter into a settlement with the defendant, Vaughan B. Connelly, whereby there was offset against the aggregate indebtedness due the estate, the sum of $19,-881.71 owning by Gwynn individually to the defendant; that the defendant did participate in the settlement and in the breach of trust and in the fraud of the executor, Gwynn; that the defendant Connelly, instead of paying to the executor the full sum of $38,134.85, paid only the sum of $18,253.-14, receiving credit for the amount due him personally by the executor; that in the settlement referred to, the defendant with full knowledge of the fraud and breach of trust committed by the executor Gwynn, did pay the said sum of $18,253.14, which the executor Gwynn did thereafter convert to his own use in breach of his trust as executor and in fraud of the rights of the legatees under the will of the decedent; that by reason of the knowledge of the defendant of the fraudulent conversion and breach of trust of Gwynn in the utilization of the sum of $19,881.71 for payment of his individual debt, the defendant Connelly did knowingly participate in the fraudulent conversion of $18,253.14 and did demand judgment for the full sum of $38,134.85.
After a motion to dismiss the complaint was denied, the defendant Connelly filed his answer admitting that Gwynn, as executor, did have in his possession a promissory note and mortgage payable to Gwynn as executor, and that there was a sum of money due thereon, the exact amount of which was unknown to the defendant. The answer likewise admitted the second promissory note and mortgage and that there was a sum due thereon, the exact amount being unknown to the defendant, and also admitted that the executor was indebted to the de *649 fendant in an amount then unknown to'him. The answer further went on to deny knowledge of any breach of any fiduciary obligation on the part of Gwynn; denied that he participated in any breach of trust; admitted that he did pay the sum of $18,253.14 which was made by check to Gwynn in his representative capacity; and denied knowledge of any conversion on the part of Gwynn. The answer went on to state that the plaintiff and the legatees had full knowledge of the default of the said Gwynn as executor as early as January, 1952, and that all persons interested, including the heirs, legatees and devisees in the estate, were barred by the statute of limitation, this action having been commenced more than three years from the date of the discovery of the alleged fraud.
Thereafter, the complaint was amended by alleging that Gwynn, on September 15, 1947, had been appointed by the Court to he guardian of the person and of the property of the said Allie M. Harvey, then incompetent; that on or about September 5, 1948, the defendant Connelly did receive from Gwynn, as Guardian aforesaid, a loan of $25,000 of funds of said guardianship; that on or about December 31, 1948, in partial payment of the said loan, Connelly did make and sign a check in the amount of $20,000 payable to Riley A. Gwynn, drawn upon a bank in Washington, D. C. and that at the request of Gwynn, the defendant Connelly did deposit the check in Gwynn’s personal account at the bank in Washington, D. C.; that Gwynn remitted to his account as Guardian only $17,500, leaving a balance of $2,500 in his personal account, which sum he never did remit or deposit in the guardianship of the estate of Allie M. Harvey, deceased, and in which estate he had been subsequently appointed executor; that the said Gwynn did convert to his own use the said sum of $2,500 and that defendant Connelly, by reason of his participation in the conversion of the said sum, is liable for this amount to the estate; that the plaintiff bank did not learn of this transaction until July, 1957.
The defendant, in his answer to the amendment, admitted the making of the loan and that he partially repaid the loan in the amount of $20,000 on or about December 31, 1948, but denied any knowledge of the activity of the guardian, Gwynn, in defaulting or failing to account for the proceeds thereof and that he is without knowledge of any alleged default as regards the sum of $2,500, and that said payment was made by him in good faith and without any knowledge of fraud or breach of trust on the part of Gwynn; denied that the plaintiff hank or the legatees or devisees did not learn of the alleged fraud until July, 1957, but affirmed that the same was known to them for many years prior thereto.
The case went to trial on the issues as made up by the complaint, the amendment thereto, the answer, and .the amended answer. At the trial, the Court directed a verdict in favor of the plaintiff for the sum of $19,881.71, being the difference between the total amount due under the tw.o notes and mortgages, and the sum of $18,253.14, the amount paid by the defendant; submitted to the jury the claim for this latter amount and directed a verdict for the defendant'on the claim for $2,500. It is the contention of the appellant that the alleged fraud became 'known to the heirs, legatees and devisees under the will in 1952. The difficulty with this is that the heirs, legatees or devisees were'.in no position to institute a suit since .the Probate Act centers the control of. all the assets in the personal representative who is directed to take possession of the personal property wherever situate. Sec. 733.01 F.S.1959, F.S.A. Likewise there is authority to the effect that the defendant, being a participant in the fraud or attempted fraud, cannot invoke the statute of limitations in his favor. The rule is stated in 34 American Juris prudence, page 290, to-wit:
“Also it may be here stated that the defense of the Statute of Limitations cannot he invoked by a participant in a breach of trust any moré than by the *650 Trustee himself. Thus where a Trustee such an an Administrator, guardian or other representative of a person under legal disability, has been guilty of -converting the Estate of his cestui que trust neither the Trustee nor one who ¡has received the Estate from him with ¡knowledge of the facts may plead the ¡bar of the Statute.”
In Perry on Trusts, 5th Ed. Sec. 828, it is stated:
“Even the Statute of Limitation does not apply to a purchaser taking the property with full notice of the trust and therefore by fraud.”
Also in Goodwin v. American Surety of N. Y., 190 Wash. 457, 68 P.2d 619, 621:
“Where trustee, such as administrator, guardian, or other representative, of person under legal disability, has been guilty of converting estate of cestui que trust, neither trustee nor one who has received estate from trustee with knowledge of facts may plead statute of limitation.”
The jury returned a verdict in favor of the plaintiff in accordance with the instructions of the Court, for $19,881.71; its verdict for the defendant in the sum of $18,253.14; and a verdict for the defendant for the sum of $2,500; in accordance with the Court’s instruction. The defendant Connelly has appealed from the judgment against him and likewise the plaintiff bank has filed cross-assignments of error on the claims for $18,253.14 and $2,500.
This cause was tried upon the issues of fraud and conversion on the part of the executor, Gwynn, and the knowledge of and the participation therein by the defendant Connelly, and the bar of the statute of limitations, where an action is based upon fraud. There is no question but that as of December 28, 1950, Connelly was indebted to the estate in the full sum of $38,134.85 for principal and interest, this indebtedness feeing evidenced by promissory notes secured by mortgages. Among the exhibits is the note and mortgage dated December 9, 1947, both of which are instruments under seal. The other note and mortgage do not appear to be among the exhibits but presumably the mortgage was an instrument under seal whether or not the note was. The statute of limitations on an instrument under seal is, of course, twenty years. In the trial of the cause the lower Court ruled that the three year statute of limitations was not available to the defendant Connelly for the reason that the bank had been appointed administrator less than three years prior to the filing of the present cause. Under either theory the bar of the statute of limitation was not available to the defendant on the claim for the sum of $19,881.71. Accordingly there is no error on the part of the trial court in instructing the jury to bring in a verdict for this amount. When the defendant and the executor got together for the purpose of making their settlement, the attempted act of the executor in giving Connelly credit for his individual indebtedness was, of course, totally unauthorized, because the executor was without power to bind the estate in any such transaction.
In 34 C.J.S. Executors and Administrators § 1023, p. 1280, the text states that since a sale, transfer or payment made without authority passes no title and does not constitute an administration, an administrator d. b. n. may pursue property so disposed of. See also Scott on Trusts, 2d Ed., sec. 322. It has also been held that an administrator’s unauthorized payments of assets of the estate passed no title to persons to whom payments were made, and did not constitute an administration of such assets. National Surety Corporation v. Laughlin, 178 Miss. 499, 172 So. 490. Moreover, one who takes or purchases trust property with knowledge of the trust, stands in the place of his grantor and is himself chargeable with the trust or, as sometimes expressed, is accountable as trustee ex maleficio. This is upon the principle that the title of the cestui que trust has not been affected by the transfer. Goodwin v. Amer *651 ican Surety of N. Y., supra. As to the sum of $18,253.14, for which claim is made by the bank, and which amount was paid to the executor in his official capacity, the question of fraud and Connelly’s participation therein under the issues as made by the pleadings, became one for the jury and the jury determined this in the defendant’s favor. We likewise see no reason to disturb this verdict. There remains the third claim for $2,500 on which the Court directed a verdict in favor of the defendant. We do not find sufficient evidence in the record to support a verdict for the plaintiff at the hands of the jury. In fact, the appellee does not, in its brief, contend otherwise. We have examined the remaining assignments of error and find them to be without merit.
Affirmed.
ALLEN, C. J., and SHANNON, J., concur.