### GEORGE BENNETT MOTOR EXPRESS, INC.

v.

### SAFECO LIFE INSURANCE COMPANY.

No. C82–1426A.

United States District Court,
N.D. Georgia,
Atlanta Division.

Aug. 29, 1983.

**450**

Rod G. Meadows, Smith, Welch & Meadows, McDonough, Ga., Harvey S. Gray,

Smith, Cohen, Ringel, Kohler & Martin, Atlanta, Ga., for plaintiff.

John V. Burch, Bovis, Kyle & Burch, Atlanta, Ga., for defendant.

### ORDER

MOYE, Chief Judge.

Before the Court in the above-styled insurance policy dispute are cross-motions for total and/or partial summary judgment. A factual and procedural background of the case is set out below.

### Background

The plaintiff on June 2, 1982, filed a complaint in the Superior Court of Henry County, which was removed to this Court, seeking proceeds of a safety and accident insurance policy issued by the defendant, Safeco Life Insurance Company, covering John David Garrison in the amount of $100,000, plus statutory damages in the amount of $25,000 plus attorney's fees and costs. The insurance policy in pertinent part provides that when injuries of the insured result in the loss of life, then Safeco will pay to the beneficiary the principal sum set forth in the policy. The insurance policy in the exclusions section provides in pertinent part that the policy does not cover loss resulting from disease or any type of hernia. The owner and beneficiary of the insurance policy is the plaintiff, George Bennett Motor Express, Inc. At the time of his death, John David Garrison was the president of the plaintiff corporation. Further, the premiums on the insurance policy had been paid and the insurance policy was in full force and effect.

While on a business trip to Houston, Texas, Mr. Garrison and Mrs. Garrison noted a billboard advertising the Physician's Nicotine Clinic. Because Mr. Garrison was interested in breaking the habit of smoking, Mrs. Garrison called the clinic and learned that the doctor who ran the clinic had practiced at the Mayo Clinic and that the clinic assisted persons to stop smoking by administering injections in the ear, nose and neck. Mr. Garrison decided to have

the injection therapy so on Tuesday, April 28, 1981, he went to the clinic where x-rays were taken, blood work was performed, an electrocardiogram was taken, and injections were administered to his ear, nose and neck. During the week following the injections, Mr. Garrison was abnormally agitated, nervous, incoherent, and tired. On Wednesday evening, May 6, 1981, Mr. Garrison had chills, a fever, and terrible pains in the back of his neck. Mr. Garrison was rushed to the emergency room at Crawford Long Hospital. At the hospital, Mr. Garrison's condition continued to deteriorate. His blood pressure was erratic; his throat swelled so much that the physicians were forced to perform an emergency tracheotomy; and his head swelled severely, nearly forcing his eyes shut. On the morning of May 9, 1981, eleven (11) days after the injections in Houston, Mr. Garrison died.

An autopsy was performed on May 10, 1981, by Dr. John Richard Feegel, Associate Chief Medical Examiner for Fulton County, Georgia, who concluded, as reflected on the autopsy report that the cause of death of Mr. Garrison was "gram negative septicemia due to cellulitus of neck due to injection therapy." Dr. Feegel, consequently, concluded that the "death of [Mr. Garrison] was caused by a disease." Feegel Deposition, p. 31. It appears that no pre-existing disease or medical or bodily infirmity existed in Mr. Garrison at the time of the injections caused or contributed in any way to the infection which caused Mr. Garrison's death. See the Plaintiff's Statement of Material Facts as to Which it Contends There is no Genuine Issue to be Tried [Plaintiff's Statement of Undisputed Facts] p. 6, ¶ 24; and the May 23, 1983 Response by Defendant to the Plaintiff's Statement of Undisputed Facts [Defendant's Response to the Plaintiff's Statement of Undisputed Facts], p. 1, ¶ 1. Based upon the autopsy, a conversation with Dr. Bahynsky, who administered the injection therapy in Houston, and a review of the Crawford Long Hospital records, Dr. Feegel opined that either a contaminated drug that was injected into Mr. Garrison or what

laymen call a "dirty needle" caused the infection which in turn caused the death of Mr. Garrison. Feegel Deposition, p. 25. Based upon assumptions that Mr. Garrison did not intend to contract the fatal infection and that Dr. Bachynsky did not intend to create the fatal infection, and upon the specific circumstances of this case, Dr. Feegel concluded that the loss of life of Mr. Garrison was not due to suicide, homicide or natural death; rather, he determined that the demise of Mr. Garrison was due to an "accidental death." Feegel Deposition, p. 31.

■ While analyzing the pending motions for summary judgment, the Court recognizes that many of the facts are undisputed. However, the Court notes that the plaintiff disputes whether the infection which caused the death of Mr. Garrison should be classified as a "disease" under the policy. The defendant disputes conclusions reached by Dr. Feegel, who performed the autopsy, which were founded upon conversations with or assumptions concerning Dr. Bachynsky, who performed the injection therapy, on the grounds that Dr. Feegel has no personal knowledge of what occurred in Houston and that Dr. Feegel relies on hearsay as to the contents of the infections. Furthermore, the defendant disputes how the fatal infection entered the body of Mr. Garrison. The defendant further objects to the assumptions relied on by the plaintiff and Dr. Feegel with regard to the intentions of Dr. Bachynsky and Mr. Garrison concerning the injections on the ground that there is no evidence in the record to establish the intentions of those persons for purposes of summary judgment. The facts in dispute are essential to the outcome of this action. In addressing the motions for summary judgment, the Court will consider the facts in a light most favorable to the non-movant.

*Motions for Summary Judgment*

■ The Court notes that the standard for summary judgment requires an inquiry into the merits of the parties' claims. Un-

der Fed.R.Civ.P. 56, the party seeking summary judgment bears the exacting burden of demonstrating that there is no actual dispute as to any material fact. *Warrior Tombigbee Transportation Co., Inc. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir.1983), *Impossible Electronics Techniques, Inc. v. Wakenhut Protective Systems, Inc.,* 669 F.2d 1026 (5th Cir.1982). Summary judgment should be granted when it is clear what the truth is, and when no genuine issue remains for trial. *National Screen Services Corp. v. Poster Exchange, Inc.,* 305 F.2d 647 (5th Cir.1962). In assessing whether the party moving for summary judgment has borne his burden of demonstrating want of actual dispute as to a material fact, the court should view all evidence introduced and all factual inferences from that evidence in the light most favorable to the party opposing the motion, and all reasonable doubts about the facts should be resolved in favor of the nonmoving litigant. *Impossible Electronics, supra,* 669 F.2d at 1031. However, denials or allegations by the nonmoving party in the form of legal conclusions unsupported by specific facts have no probable value and are thus insufficient to create issues of material fact that would preclude summary judgment. *SEC v. Bonastia,* 614 F.2d 908, 914 (3rd Cir.1980); *Broadway v. City of Montgomery,* 530 F.2d 657, 660 (5th Cir. 1976); *Benton-Volvo-Metaire, Inc. v. Volvo Southwest, Inc.,* 479 F.2d 135, 139 (5th Cir.1973).

The Supreme Court of Georgia in *Thornton v. Travelers Insurance Co.,* 116 Ga. 121, 126, 42 S.E. 287 (1902), discusses the rules for interpreting accidental loss policies as follows:

In construing a policy of life-insurance, that interpretation is to be placed upon the words of the policy which is most favorable to the insured, and all ambiguities and doubts are to be resolved in favor of a liability against the insured (citations omitted). And especially is this rule of construction to be adhered to and applied in cases where the insured has prima facie evidence to establish a right to recover under the terms of the policy, and the company is seeking to defeat such a liability by showing that the act complained of is within one of the exceptions reserved in the contract as a defense to an action on the policy. All such exceptions are to be construed strictly against the company and liberally in favor of the insured. *Accident policies* generally contain a clause the purpose of which is to relieve the insurer from responsibility in case of disease or disability of the insured from disease. The language of this clause is not the same in all policies, and the determination of the question whether under such a clause the company is relieved in a particular case depends upon the exact language in which the exception is couched....

(emphasis added).

The relevant language of the safety and accident insurance policy at issue in the instant case reads as follows:

PRINCIPAL SUM—ACCIDENTAL LOSS OF LIFE ... BENEFIT:

When injuries of the insured ... result in any of the following losses within 120 days of the date of the accident, SAFECO will pay for:

Loss of Life ....... The Principal Sum;

DEFINITIONS AND POLICY PROVISIONS

"Injury," for the purpose of this policy, means bodily injury caused by an accident while this policy is in force and resulting, directly and independently of all other causes, in a loss covered by this policy.

"Loss" means loss of life, limb, sight, medical expense incurred for treatment of an injury caused by an accident or disability as a result of an injury caused by an accident.

EXCLUSIONS

This policy does not cover loss resulting from:

(g) Disease or any type of hernia

On March 14, 1983, the defendant filed a motion for summary judgment on the ground that it is entitled to judgment in its favor under the insurance policy because

the death of Mr. Garrison was caused by disease and is therefore not covered under the policy pursuant to exclusion (g).

In support of its motion, the defendant shows from the record that Dr. Feegel, who performed the autopsy on Mr. Garrison, specifically stated that the death of Mr. Garrison was caused by a disease. Feegel Deposition, p. 31. While the plaintiff denies that the infection from which Mr. Garrison died is a disease, see Plaintiff's Statement of Undisputed Facts, p. 6, ¶ 26, the plaintiff fails to present evidence to contradict Dr. Feegel's conclusion. The mere denial or allegation of the plaintiff that death was not caused by disease has no probative effect absent support by specific record facts, thus the plaintiff has failed to create a genuine issue of material fact concerning whether the death was caused by disease. See SEC v. Bonastia, 614 F.2d 908, 914 (3rd Cir.1980), see also Broadway v. City of Montgomery, 530 F.2d 657, 660 (5th Cir.1976).

The plaintiff opposes the defendant's motion for summary judgment which is based upon exclusion (g) of the insurance policy on the ground that under Georgia law when an accident, directly and independently of all other causes, causes a disease which in turn results in the death of the insured, the disease exclusion in a safety and accident insurance policy does not apply. To support its position, the plaintiff first shows that the case relied upon by the defendant are distinguishable from the case at bar because they involve preexisting diseases or mental or bodily infirmities in the insured at the time of the accidental injury which either caused the accidental injury or death aggravated the injury or were aggravated by the accident so as to combine and jointly cause the loss. The defendant, for example, relies on Jordan v. United States Insurance Company of America, 158 Ga.App. 520, 281 S.E.2d 286 (1981), which involved a claim for the loss of a limb from bodily injury effected directly and independently of all other causes through bodily injury by accident. The Georgia Court of Appeals concluded that

summary judgment against the insured must be affirmed because the evidence showed that the loss of the plaintiff's leg was attributable to arteriosclerotic occlusion (hardening of the arteries) and there was no causal relationship between the gangrenous condition of the plaintiff's left foot and his fall and fracture of that foot. The Georgia Court of Appeals concluded in the alternative that the pre-existing disease was "at the very least a contributing factor to the loss of his leg." 158 Ga.App. at 521, 281 S.E.2d 286. In the instant case, however, it appears that no pre-existing disease or medical or bodily infirmity existed in Mr. Garrison prior to the injection therapy which contributed in any way to the death of Mr. Garrison. See The Plaintiff's Statement of Undisputed Facts, p. 6, ¶ 24 and the Defendant's Response thereto, p. 1, ¶ 1.

The plaintiff also brought to the attention of the Court the case of Banker's Health & Life Insurance Company v. Smith, 54 Ga.App. 525, 188 S.E. 463 (1936), in which the Georgia Court of Appeals held that liability is not denied under a disease exclusion when the accidental injury is the direct cause of the disease which thereafter caused the death. In Smith, the insured was struck by a motor vehicle which knocked him unconscious and threw him into a ditch where he lay for several hours during a cold night. As a result, the insured developed pneumonia, a disease, from which he died. In Smith, as in the instant case, the insured was without disease prior to the accident. The Court agrees that summary judgment is inappropriate based upon the disease exclusion under the reasoning in Smith in light of the allegations that the injections or accident in Houston caused the infection which caused the death of Mr. Garrison. Feegel Deposition, p. 28.

On April 15, 1983, the plaintiff filed a motion for partial summary judgment on the grounds that the facts show that the death of Mr. Garrison was caused solely and independently of all other causes by accident in that Mr. Garrison, who was in good health, was unexpectedly and uninten-

tionally injected with harmful bacteria by either a dirty needle or contaminated drugs which in turn caused an infection that resulted in the death of Mr. Garrison. The plaintiff relies mainly on *Horton v. Traveler's Insurance Company,* 45 Cal.App. 462, 187 P. 1070 (1920), in which the court held that the introduction of virulent germs into the insured's body by and through dental instruments utilized in connection with the removal of a wisdom tooth as a result of the instruments being unsterilized equated with death caused by accidental means. While not controlling, the reasoning in *Horton* is convincing.

The defendant in response to the plaintiff's motion for partial summary judgment amended its own motion for summary judgment to include the additional ground that there has been no accident within the meaning of the policy so as to bring Mr. Garrison's death within the policy coverage. The defendant points out that under Georgia law there is a distinction between accidental means and accidental results. For this proposition the defendant relies on *Johnson v. National Life & Accident Insurance Company,* 92 Ga.App. 818, 819, 90 S.E.2d 36 (1955), in which the Georgia Court of Appeals explained that "where an injury is unexpected but arises from a voluntary action it is an 'accidental injury,' but for injury to result from accidental means, it must be the unexpected result of an unforeseen or unexpected act which was involuntarily and unintentionally done." 92 Ga.App. at 819, 90 S.E.2d 36. The defendant also pointed out that the Georgia Court of Appeals in applying the accidental means test in *Johnson* concluded that where an insured consents to an injection of 600,000 units of penicillin and dies from that injection because of his "idiosyncrasy consisting of hypersusceptibility to a harmless drug (penicillin)," the injection was not an unforeseen, unexpected, unusual, or unintentional act; therefore, the injury did not result from accidental means. 92 Ga. App. at 820, 90 S.E.2d 36.

The case at bar, however, is distinguishable from *Johnson* because it ap-

pears that neither Mr. Garrison nor Dr. Bachynsky knew or had reason to know or suspect that either the solution injected into Mr. Garrison was contaminated with harmful bacteria or that the needle was likewise contaminated. While in *Johnson* the insured and the doctor knew and consented to the injection of 600,000 units of penicillin, Mr. Garrison and Dr. Bachynsky did not know or expect that the injection included harmful bacteria. The Court, therefore, concludes that when an individual consents to the injection of a known solution but in fact is injected with an unknown solution, as alleged in this case, the injection of the unknown solution is an unforeseen, unexpected, unusual, or unintentional act. Consequently, should a jury accept the facts as alleged by the plaintiff, then the jury would be authorized to conclude that the bodily injury of being injected with harmful bacteria, as alleged in this case, occurred from accidental means and resulted in the death of Mr. Garrison, which was an unintended or unexpected result of the injection therapy.

While the Court determined from the record that no genuine issue remains as to whether the death of Mr. Garrison occurred from a "disease," the Court concludes that resolving factual disputes concerning the other "disputed" facts such as what occurred in Houston and the specific intent of individuals is inappropriate for summary judgment resolution based upon the nature of this action and upon the alleged circumstances involved. However, the Court herein determines that if the plaintiff is able to prove the facts as alleged, then it should recover under Georgia law.

In conclusion, the cross-motions for summary judgment are DENIED because essential factual issues remain in dispute as explained herein.

SO ORDERED, this 29th day of August, 1983.