The **REPUBLIC OF HAITI**, Plaintiff,

v.

**CROWN CHARTERS, INC., Robert Williamson, and Guy. Couach, Inc., Defendants.**

**No. 86–6602–Civ.**

United States District Court, S.D. Florida.

Aug. 13, 1987.

James M. Miller, of Akerman, Senterfitt & Edison, Miami, Fla., for plaintiff.

William F. Leonard, of Leonard and Morrison, & Harry G. Carratt, of Morgan, Carratt and O'Connor, Fort Lauderdale, Fla., for defendants Crown Charters, Inc. and Robert Williamson.

R.G. Lubbers, Jr., of Lubbers & Lynch, Fort Lauderdale, Fla., for defendant Couach.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT, FOR PROTECTIVE ORDER AND TO COMPEL

PAINE, District Judge.

This cause comes before the court on defendant Guy Couach, Inc.'s motion for summary judgment (DE 74), plaintiff's motions to compel (DE 117) and for protective order (DE 121), and defendant Crown Charters, Inc.'s motion to compel (DE 94).

## I. BACKGROUND

The Republic of Haiti brought this action to enforce certain equitable remedies with respect to property purportedly misappropriated by Jean-Claude Duvalier, former "president for life" of the Republic of Haiti. The complaint (DE 1) alleged the following. An eighty-six foot luxury yacht, originally named the "Niki" and now called the "Victoria Won," was purchased by Duvalier with over $1 million embezzled and converted from Haiti by Duvalier and others. Fincal Holding, Inc., a Panamanian holding company, acting as Duvalier's agent, used converted funds to purchase the yacht from Couach, which had constructed it pursuant to Duvalier's instructions. Duvalier put the yacht to personal use from October 1984 to March 1985, when he returned it to Couach for repairs and eventual sale. In March 1986, acting through Fincal, Duvalier sold the yacht to Crown through Crown's agent, defendant Robert Williamson. Crown and Williamson knew or should have known that Duvalier had acquired the yacht with misappropriated Haitian government funds and that the money paid by Crown to buy the yacht would be retained by Duvalier for his personal use and benefit. The complaint further alleged that Couach acted as broker for Duvalier in selling the yacht to Crown and received a commission on the sale from Fincal, and that Couach knew or should have known that the commission was comprised of .converted Haitian government funds. The various counts of the complaint charged constructive trust, foreclosure of an equitable lien, conversion, and injunction.[1] Subject matter jurisdiction is

---

1. On February 27, 1987, this court entered a temporary restraining order (DE 27) enjoining defendants from selling, encumbering, transferring, conveying, or disposing of the Niki or moving it from United States territorial waters abutting the Southern District of Florida. The order was entered ex parte, based on plaintiff's reasonable fear that the yacht was being readied for departure or sale. On March 9, the court after a hearing (DE 112) dissolved the temporary restraining order and entered a preliminary injunction (DE 33) enjoining defendants

proper based on diversity of citizenship because the action is between a foreign state and citizens of different states with the amount in controversy over $10,000. 28 U.S.C. § 1332(a)(4) (1982).

Crown moved to dismiss the complaint for failure to state a claim (DE 7) and for failure to join Duvalier, Fincal, and Captain Antoine Philador, the commander of Duvalier's private vessels, as indispensable or necessary parties (DE 6). In an order entered March 9, 1987 (DE 31), this court denied the motion to dismiss for failure to join parties but granted in part the motion to dismiss for failure to state a claim. The court concluded that the complaint stated a claim for declaratory relief under 28 U.S.C. § 2201 (1982) and should not be dismissed. The court granted the motion, however, with respect to the conversion claim, finding that the allegations of the complaint were insufficient to establish that the yacht was purchased with specific, ascertainable funds converted by Duvalier from the Haitian government.

Plaintiff has filed an amended complaint (DE 44) in a second attempt to state a claim for conversion. The amended complaint also seeks a declaratory judgment, damages, imposition of a constructive trust, and other equitable relief for breach of trust and fiduciary duties and for money had and received.

## II. MOTION FOR SUMMARY JUDGMENT

A party seeking summary judgment bears the burden of demonstrating that there is no genuine dispute as to any material fact. *American Viking Contractors, Inc. v. Scribner Equipment Co.*, 745 F.2d 1365, 1369 (11th Cir.1984). Once the moving party has sufficiently supported the motion, the party opposing summary judgment must come forward with significant probative evidence demonstrating the existence of a triable issue of fact. *Ferguson v. National Broadcasting Co.*, 584 F.2d 111, 114 (5th Cir.1978).[2] The question for the court in a motion for summary judgment is "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (quoting *Improvement Co. v. Munson*, 14 Wall. 442, 448, 20 L.Ed. 867 (1872) (emphasis in original)). Couach asserts that the amended complaint, taken together with the submissions of the parties, fails to establish a basis for Couach's liability and should be dismissed. The court will address each of the five counts in turn.

### A. *Constructive Trust*

Count I alleges that Duvalier owes plaintiff a fiduciary duty and that his misappropriation of government funds constituted a breach of that duty. The amended complaint sets out payments to Couach from Fincal preceded by payments of similar amounts to Fincal which allegedly were from Haitian government funds. Copies of checks and wire transfer documents are attached to the amended complaint.[3] Plain-

from selling, transferring, conveying, or disposing of the Niki and from cancelling, modifying, or discontinuing any insurance coverage on it. The order required the Republic of Haiti to post a $100,000 bond with the Clerk in order to secure the injunction. Although Haiti was unable to post the bond, the preliminary injunction was rendered moot on March 18, when President Reagan signed an Executive Order (DE 146) freezing certain assets on which Haiti had made claims. The Office of Foreign Assets Control of the Department of the Treasury provided notice to defendants in this cause that the Niki fell within the scope of the Executive Order and was subject to its prohibitions.

**2.** Decisions of the former Fifth Circuit filed prior to October 1, 1981 constitute binding prece-

dent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

**3.** The amended complaint provides in pertinent part:

11. In furtherance of such illicit conspiracy, Duvalier and his co-conspirators misappropriated Haitian government funds and funneled such funds to Fincal by: (a) purchasing bank checks, payable to Fincal, from Haiti's Banque Nationale de Credit ("BNC") and depositing such checks in Fincal's account at Bank of Boston International in Miami, Florida; and (b) wiring monies directly to such account. Such funds include, but are not limited to, the following:

tiff alleges that, when Fincal obtained these funds and used them to purchase the Niki, it did so as trustee for the benefit of Haiti. Plaintiff next alleges that, when Couach obtained funds from Fincal to purchase the Niki, obtained funds as its commission on the sale, and obtained possession of the Niki, it did so subject to plaintiff's beneficial interest. Further, plaintiff asserts that, when Crown purchased the Niki from Fincal, Crown took title with actual or constructive notice of plaintiff's interest and therefore holds the Niki in trust for plaintiff's benefit. Plaintiff seeks the imposition of a constructive trust on the yacht and proceeds of Couach's commissions.

█ The imposition of a constructive trust is an appropriate remedy for breach of fiduciary duty. Under the constructive trust doctrine, the rightful owner of misappropriated trust property may trace to the proceeds of such property and to whatever has been bought with the proceeds if it is capable of being substantially identified as having been acquired with the misappropriated property or funds. *See Boswell v.*

*Cunningham,* 32 Fla. 277, 13 So. 354 (1893).[4] This right of reclamation attaches to the property until it is barred by the superior equity of a bona fide purchaser for value without notice. 56 Fla.Jur.2d *Trusts* § 122 (1985).

█ Couach first argues that it is entitled to judgment as a matter of law on Count I because there is no material issue of fact that it was a bona fide purchaser for value without notice. Couach bears the burden of proof of its status as a bona fide purchaser without notice. *McDonald v. McGowan,* 402 So.2d 1197, 1200 (Fla.Dist. Ct.App.1981). In support of its position, Couach proffers the affidavit of Michael F. Katzin (DE 75), Couach's counsel, which sets forth the circumstances surrounding the sale of the Niki.[5] Plaintiff proffers evidence in rebuttal, and Couach concedes (DE 75), that Couach probably knew that Duvalier was the purchaser of the yacht and that Fincal was related to Duvalier personally or the Haitian government. Whether the apparent relationship between the Haitian government or its dictator per-

(A) Specifically, by Teller's Check No. 125710 in the amount of $500,000 dated August 23, 1984, Fincal transferred $500,000 from its account at Bank of Boston to Couach. A copy of the debit advice reflecting this transfer is annexed hereto as Exhibit A. Immediately preceding this transfer, $550,000 of Haitian government funds were deposited into Fincal's account. Thus, a $350,000 check issued by BNC, the commercial branch of Haiti's central bank, was deposited into Fincal's account on August 2, 1984. As set forth on the requisition for this $350,000 check, the check was purchased by "Gvt. D'Haiti," Copies of the deposit ticket, the $350,000 check and the check requisition are annexed hereto as Exhibit B. On August 21, 1984, BNC transferred another $199,990 to Fincal's account. Copies of this wire transfer check for $199,-990 and the related deposit ticket are annexed hereto as Exhibit C.

(B) Similarly, by check dated October 5, 1984, Fincal transferred $6000,000 from its account at Bank of Boston to Couach. A copy of this check, which is signed by Duvalier's private secretary, Auguste Douyon, is annexed hereto as Exhibit D. Immediately preceding this transfer, BNC transferred approximately $6000,000 to Fincal's account at Bank of Boston in the form of three transfers in the amount of approximately $200,000 each. Copies of the documents establishing these

transfers are annexed hereto as Exhibits E, F and G, respectively.

(C) By check dated February 17, 1984, Fincal transferred $500,000 from its account at Bank of Boston to Couach. A copy of this check, also signed by Auguste Douyon, is annexed hereto as Exhibit H.

12. The only funds which Fincal had in its account at Bank of Boston International in Miami, Florida were funds which were misappropriated from the Haitian government as alleged above, including those funds identified above. Fincal used the specific, identifiable funds described above to purchase the Niki.

(DE 44).

4. The parties do not dispute that the substantive law of Florida governs this diversity case. *See Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

5. Katzin also states in the affidavit that no officer or employee of Couach had constructive notice that the funds used were misappropriated Haitian government funds. Whether Couach had constructive notice, however, calls for a legal conclusion, which is inappropriate for the court's consideration on summary judgment. *See George Bennett Motor Express, Inc. v. Safeco Life Insurance Co.,* 575 F.Supp. 449, 452 (N.D. Ga.1983).

sonally and a Panamanian holding company should have put Couach on notice of wrongdoing cannot be determined by the court on these materials. Where, as in this case, conflicting inferences can be drawn from the circumstances, the issue of constructive notice should be determined by the trier of fact. *McDonald*, 402 So.2d at 1200–01. Accordingly, the court will not decide the notice issue on summary judgment.

Couach further argues that plaintiff cannot prove Couach had notice that the funds were misappropriated because it is impossible to distinguish among Duvalier's acts as an individual, his lawful acts as president, and his improper acts as president. Couach contends that Duvalier was recognized by the executive branch of the United States government as the lawful government of the Republic of Haiti and that this court is constitutionally bound to accept that recognition. According to Couach, this premise compels the conclusion that, even if it knew Duvalier was the purchaser of the Niki, it had no reason to know that Duvalier's actions were unauthorized.

Couach cites *Republic of the Philippines v. Marcos*, 818 F.2d 1473, 1488–1489 (9th Cir.1987), in which the Ninth Circuit noted the difficulty of determining when the acts of an absolute ruler are authorized acts of the government and when they are not. That case, however, is quite different from the one before this court. The Republic of the Philippines sought not simply the recovery of specific property but the return of all or part of the former president's wealth allegedly looted from Philippine coffers. At the heart of that case was plaintiff's assertion that all of the Marcoses' wealth must have been stolen. The Ninth Circuit determined that a substantial portion of Marcos' conduct was shielded by the act of state [6] and political question doctrines, thus defeating plaintiff's net worth theory and with it plaintiff's case. The Court of Appeals distinguished that situation, however, from a case in which plaintiff "sought to trace specific assets to spe-

cific alleged misdeeds." *Id.* at 1489. The matter before this court is that case. Although the Republic of Haiti may have difficulty proving its allegations that Duvalier improperly drew on Haitian government funds to buy the Niki, and that Couach had notice of these improprieties, the court is unwilling to hold that such proof is impossible as a matter of law. *Cf. Republic of the Philippines v. Marcos*, 806 F.2d 344 (2d Cir.1986) (preliminary injunction warranted where plaintiff offered sufficient evidence of illegality to warrant imposition of constructive trust or equitable lien on specific parcels of real property), *cert. dismissed*, —— U.S. ——, 107 S.Ct. 1597, 94 L.Ed.2d 784 (1987).

### B. Damages for Breach of Fiduciary Duty

■ Plaintiff in Count II seeks damages for defendants' violation of fiduciary duties owing to the Republic of Haiti. Couach argues for dismissal on the ground that defendants had no such duty because they had no special relationship to the Republic. Plaintiff responds that, under Florida law, "one who takes or purchases trust property with knowledge of the trust, stands in the place of his grantor and is himself chargeable with the trust or, as sometimes expressed, is accountable as trustee ex maleficio." *Connelly v. Florida National Bank*, 120 So.2d 647, 650 (Fla.Dist.Ct.App. 1960). Couach replies that this is simply another argument for imposition of a constructive trust, as advanced in Count I. The court has refused to dismiss that count and likewise will not dismiss Count II, even though the relief it seeks need not have been set forth separately from Count I. *See* Fed.R.Civ.P. 8(e)(2).

### C. Conversion

In Count III, plaintiff seeks damages and imposition of a constructive trust for defendants' unlawful conversion of the monies identified in the complaint and their proceeds—that is, the Niki and Couach's

---

**6.** Couach concedes that the act of state doctrine is inapplicable to the instant dispute (DE 115, at 4). Defendants Crown and Williamson, however, urge in another motion that the doctrine does apply (DE 135, at 3).

commission. Couach argues that summary judgment should be granted on this court because the funds allegedly converted were not sufficiently identifiable to form the basis of an action for conversion.

 In order for money to be the subject of a conversion claim, it must be capable of identification as a specific chattel:

To be a proper subject of conversion each coin or bill need not be earmarked, but there must be an obligation to keep intact or deliver the specific money in question, so that such money can be identified. *Shahood v. Cavin,* 1957, 154 Cal. App.2d 745, 316 P.2d 700. Money is capable of identification where it is delivered at one time, by one act and in one mass, or where the deposit is special and the identical money is to be kept for the party making the deposit, or where wrongful possession of such property is obtained. *Hazelton v. Locke,* 1908, 104 Me. 164, 71 A. 661. An example is where a specific sum of money is to be held in constructive trust until the occurrence of a specified event. *Markel v. Transamerica Title Insurance Company,* 1968, 103 Ariz. 353, 442 P.2d 97.

Accordingly, Florida courts have held money to be a proper subject of conversion where a sum of money sealed in an addressed envelope was misdelivered, (*Southern Express Company v. Van Meter,* 1880, 17 Fla. 783), and where a specified sum of money in a deposit bag was never credited to the depositor's account (*Armored Car Serv., Inc. v. First Nat. Bank of Miami,* Fla.App.1959, 114 So.2d 431).

*Belford Trucking Co. v. Zagar,* 243 So.2d 646, 648 (Fla.Dist.Ct.App.1970). Money in a bank account can properly be the subject of a conversion action when the account and amount are separate and ascertainable. For example, in *Allen v. Gordon,* 429 So.2d 369, 371 (Fla.Dist.Ct.App.1983), the Florida First District Court of Appeal held that the money in question was specific and identifiable where the defendant had withdrawn the balances of a joint savings account and a certificate of deposit account. In contrast, "[a] mere obligation to pay money may not be enforced by an action for conversion." *Capital Bank v. G & J Investments Corp.,* 468 So.2d 534, 535 (Fla.Dist. Ct.App.1985). In *Capital Bank,* the payee sought to hold a bank liable for conversion, claiming that the instrument had been accepted by the bank prior to the bank's receipt of a stop payment order. The Third District Court of Appeal held that plaintiff simply sought to enforce an oral contract by whose terms the bank obligated itself to pay money generally and that neither the pleadings nor the proof sufficiently identified the money so as to support a conversion claim.

 Couach contends that the amended complaint in the instant case alleges no more than that the funds were general Haitian government funds lacking in specific identity. Having carefully examined the amended complaint in light of the Florida authorities discussed above, the court disagrees. Plaintiff alleges that Duvalier and his co-conspirators misappropriated Haitian government funds and funneled them to Fincal by purchasing bank checks payable to Fincal from Haiti's Banque Nationale de Credit and depositing such checks in Fincal's account at Bank of Boston International in Miami and also by wiring monies directly to such account. The amended complaint sets out specific check numbers and amounts and attaches copies of the checks, deposit tickets, wire transfer receipts, and other documents. The amended complaint seeks to trace specific sums of money drawn from Haitian accounts through identified checks or wire transfers which were deposited in a particular Fincal account at Bank of Boston and then paid over to Couach in like amounts. Plaintiff alleges that the only funds which Fincal had in the Bank of Boston account were misappropriated Haitian government funds. The complaint also alleges that the withdrawals of Haitian government money immediately preceded payments in like amounts to Couach. *See supra* n. 3.

The court is satisfied that this paper trail, if proven, would support an action for conversion. Although a check is, in a sense, a mere obligation to pay by the

bank, *Capital Bank*, 468 So.2d at 535, involved the *bank's* obligation to pay. The case before this court, in contrast, is more like *Allen*, 429 So.2d at 371, where the use of bank accounts as a source from which money was converted did not defeat the conversion claim. Such a claim is similarly not defeated where checks and wire transfers are used as conduits for stolen property so long as the property is identifiable at the start and sufficiently retains its identity along the chain. Contrary to Couach's assertion, the fact that the original money was drawn on general Haitian government accounts is legally irrelevant as long as the money belonged to Haiti. The funds took on an identifiable character when they were withdrawn in specific amounts as represented by particular checks or wire transfers. In the court's view, that specific identity would not be lost when the funds were deposited in the Fincal account if the only funds in that account were stolen from Haiti. The funds would retain that identity if they were then paid out to Couach in amounts corresponding to the original withdrawals from Haitian accounts. Undaunted by the unique circumstances presented by this case, the court holds that Couach is not entitled to dismissal or summary judgment with respect to the conversion count of the amended complaint.

### D. *Money Had and Received*

In Count V,[7] plaintiff seeks damages on the ground that Couach owes Haiti $6 million for money had and received from Fincal in October 1984. This amount apparently represents the funds transferred from Haitian accounts to Fincal which were used to purchase the Niki.

An action for money had and received may be brought where the defendant holds money which in equity and good conscience he should pay over to the plaintiff. *Moss v. Condict*, 154 Fla. 153, 16 So.2d 921, 922–23 (1944); *accord Okeechobee County v. Nuveen*, 145 F.2d 684, 686–87 (5th Cir.1944). In Florida, such an action is based upon principles of unjust enrichment. *Okeechobee County*, 145 F.2d at 687. Couach contends that it could not have been unjustly enriched because it was a bona fide purchaser for value without notice. The court has already held that material issues of fact exist as to this issue, *see supra* part II(A). Summary judgment, therefore, is inappropriate on this count.

### III. CROWN'S MOTION TO COMPEL

#### A. *General Matters*

On April 8, 1987, plaintiff moved to prevent certain depositions noticed by Crown for April 9 and 10. On April 9, the court issued a protective order (DE 69) directing that the discovery could be had only on specified terms or only with leave of court upon a certain showing. Crown filed a motion to compel this discovery (DE 94). Plaintiff's response (DE 105) and Crown's reply (DE 109) are also before the court.

Underlying Crown's efforts to obtain this discovery is its complaint that discovery taken in two other actions in South Florida involving the Republic of Haiti has put Crown at a strategic disadvantage in the instant cause. In particular, Crown objects to the involvement of the law firm of Stroock & Stroock & Lavan in all three actions. The Stroock firm originally represented the Republic of Haiti in the instant case but withdrew when it discovered that its New York office had represented Williamson on another matter. Stroock also represented Haiti in a state case pending in circuit court in Broward County, Florida styled *The Republic of Haiti v. Fincal Holding, Inc., Robert Williamson, Carl Auguste Douyon, and Alexander Paul*, No. 86–13145 CR. Like the case before this court, the state action seeks relief based on Haiti's alleged equitable interest in the Niki. Additionally, the firm is in-

---

7. Count IV of the amended complaint seeks a declaration of Haiti's rights to the Niki pursuant to 28 U.S.C. § 2201. Couach does not seek summary judgment on this count because it does not set forth a legal theory independent from the other counts and because the court ruled in its March 9, 1987 order (DE 31) that the original complaint stated a claim for declaratory relief.

volved in a second action in federal court styled *In re Letter of Request for Judicial Assistance from the Tribunal Civil de Port-au-Prince, Republic of Haiti,* No. 86–1102–Civ–DAVIS (S.D.Fla.). In Crown's view, although Stroock has withdrawn from the instant case, it maintains an alliance with Haiti's present attorney and benefits from discovery obtained in the other cases, to which Crown is not privy. The court, however, does not share Crown's concerns. There is nothing unreasonable or improper about the pooling of information among various attorneys representing one client. There is no allegation that Stroock's representation of Williamson produced anything material to this case. Crown does not contest Haiti's assertion that the documents Haiti intends to use at trial have been listed in the pretrial stipulation and have either been produced or made available for copying. Thus, the multiplicity of actions does not provide a general basis for Crown's objections concerning discovery.

The court next addresses Crown's specific complaints regarding two groups of witnesses who are covered under the terms of the court's protective order: the Stroock lawyers and the Haitian government officials.

### B. *The Stroock Lawyers*

 In seeking a protective order, Haiti sought to quash the subpoenas duces tecum of Stroock attorneys Gary A. Dumas and David Pollack. The Stroock firm had been appointed by United States District Judge Edward B. Davis to serve as commissioner in *In re Letter of Request for Judicial Assistance from the Tribunal Civil de Port-au-Prince, Republic of Haiti,* which may be called the assistance case. In granting the motion for protective order, this court stated that it could not determine whether Dumas and Pollack could be properly noticed without more information about their role in the assistance case. The court ruled that, before the attorneys could be noticed, Crown would have to demonstrate why their testimony is relevant and why it is not protected by some form of privilege or immunity (DE 69). Crown now seeks to meet that burden.

The assistance case came before Judge Davis pursuant to 28 U.S.C. § 1782 (1982),[8] which permits United States courts to lend assistance to proceedings before foreign tribunals. Shortly after Duvalier fled Haiti along with several of his friends and close associates, the Haitian prosecuting attorney, in accordance with Haitian law and the dictates of the succeeding government, filed a complaint with the Tribunal Civil de Port-au-Prince. The complaint accused members of the former regime and the Duvalier family of crimes ranging from public corruption to embezzlement and claimed they transferred the tainted funds abroad. Under Haitian law, a *juge d'instruction,* or magistrate, investigates the case and decides whether a criminal prosecution should be brought. As part of the investigation, the *juge* sent a letter of request to the United States District Court for the Southern District of Florida to allow it to subpoena documents and to obtain information relevant to the inquiry. On June 13, 1986, Judge Davis entered an or-

---

8. The statute provides in pertinent part:

§ 1782. Assistance to foreign and international tribunals and to litigants before such tribunals

(a) The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a).

848

der under the statute appointing the Stroock firm as commissioner to conduct the discovery in accordance with the request.

Crown argues that it should be allowed to depose members of the Stroock firm on the ground that the firm has taken "ex parte discovery" in the assistance case which has been passed on to Haiti's counsel in this case.[9] The Stroock firm has obviously had wide latitude in obtaining information about Duvalier's activities and possible Haitian claims on assets in the United States because of the firm's status as commissioner. This fact, however, does not compel the conclusion that Crown should have the right to open discovery of all the information gathered by the commissioner or the unbridled right to depose Stroock lawyers. One of the purposes of 28 U.S.C. § 1782 is to permit the extension of assistance to foreign tribunals in resolving foreign disputes. *See In re Letters Rogatory from the Tokyo District*, 539 F.2d 1216, 1218 (9th Cir.1976). Although the statute vests the commissioner with limited judicial capacity such as the power to administer oaths, the commissioner's primary function is to represent the interests of Haiti in conducting the requested discovery. Thus, the Stroock firm is at all times an advocate for Haitian interests in the nature of an attorney-client relation.[10] Crown's primary interest in deposing Stroock lawyers is that they have knowledge of information which might assist Crown. Although discoverable material is broadly defined in the rules of procedure, even relevant information cannot be obtained if it is privileged. *See* Fed.R.Civ.P. 26(b)(1). Similarly, a relevant material may be protected by work product

immunity if it is prepared in anticipation of litigation by or for a party's representative. Fed.R.Civ.P. 26(b)(3). The court is confident that the letters of request issued by the *juge* in the Haitian Tribunal Civil are sufficiently in anticipation of litigation and that Stroock has acted as Haiti's representative such that these foreign legal concepts are encompassed by the work product rule. Mental impressions, conclusions, opinions, and legal theories of attorneys are also protected by the rule. *Id.* Crown's general assertions that Stroock lawyers might have access to helpful information is simply not enough to overcome the qualified immunity offered by Rule 26(b)(3).

While there is no legal basis apparent to the court for extending wide-ranging discovery rights to Crown simply because its opponent may have a strategic advantage, Crown certainly may obtain that to which it is entitled under the rules of procedure. By the same token, the interplay of the assistance statute and Stroock's status as commissioner takes this case out of the realm of the ordinary. The court is not insensitive to Crown's predicament and will not allow plaintiff to hide behind a rigid interpretation of the procedural rules when it has a leg up in the discovery process. Crown is entitled to copy the documents Haiti intends to use at trial. Further, Crown may propound depositions upon written questions to the Stroock lawyers if the questions are sufficiently specific and do not call for mental impressions and the like, and if Crown demonstrates that it is unable without undue hardship to obtain the substantial equivalent of the materials by other means. The court expects that

9. Crown's somewhat expansive allegations question the propriety of this arrangement and further assert that Stroock has "abused" the assistance proceedings. As previously discussed, even though Stroock has withdrawn from this case because of a potential conflict with its representation of Williamson, the court sees nothing improper about the sharing of information among Haiti's lawyers where the shared information does not involve the potential conflict of interest. Further, an allegation of abuse in the assistance case seems to be ill-founded and, in any event, would properly be brought before Judge Davis and not this court.

10. A party in the assistance case moved to disqualify the Stroock firm because it had a personal interest in the recovery of Haitian assets, presumably a form of contingent fee. Judge Davis denied the motion on the ground that the party requesting judicial assistance was not entirely neutral either. Order Denying Intervenor's Motion to Vacate Order and Granting Motion to Modify Subpoena Duces Tecum, *In re Letter of Request for Judicial Assistance from the Tribunal Civil de Port-au-Prince, Republic of Haiti*, —— F.Supp. ——, No. 86–1102–Civ–DAVIS, slip op. at 6–7 (S.D.Fla.March 25, 1987).

the parties will be able to work out these matters among themselves. The court will not condone trial by ambush and will require Haiti to cooperate in order to secure a resolution to these disagreements.

Accordingly, Crown's motion for an order compelling the depositions of Jedd Ringel, Gary Dumas, and David Pollack (DE 94) is granted as follows: If Crown demonstrates that it is unable without undue hardship to obtain the substantial equivalent of the materials by other means, Crown may propound depositions upon written questions to these individuals provided the questions are particular and do not call for mental impressions, conclusions, opinions, or legal theories. The court anticipates that Haiti will cooperate in this regard and that Haiti and Crown will be able to reach agreement on this discovery without the filing of further motions.

### C. *The Haitian Government Officials*

Crown also moves for leave to take the depositions of Pierre Sam, Haitian Ambassador to the United States, Antonio Jean-Poix, Haitian Consulate General, and Leslie Delatour, Haitian Minister of Finance. Delatour and Jean-Poix reside in Haiti, and Sam in Haiti and Washington, D.C. In entering its April 9, 1987 protective order (DE 69), the court found under Fed.R. Civ.P. 26(c) that, considering plaintiff's financial circumstances, it would be unduly burdensome and expensive to compel these witnesses to appear for deposition in Miami. Further, the relevance of the testimony of Sam and Jean-Poix was not apparent to the court. The court ruled that Delatour's deposition could be had only at a time and place agreed upon by the parties or sanctioned by the court if the parties fail to agree, and that the depositions of Sam and Jean-Poix could be had only with leave of court upon a showing of relevance and particularized need.

■ In support of its motion for leave to take Sam's deposition, Crown has submitted a copy of an affidavit filed in the state case in which Sam claims personal knowledge of the funneling of funds from Haiti to Fincal to buy the Niki. Because this assertion of personal knowledge suffices to show relevance and particularized need, Crown shall have leave to depose Sam. The Ambassador resides in Haiti and Washington, D.C., and the court enjoins the parties to agree upon time and place to take his deposition, perhaps in Miami or in Washington.

The relevance of Delatour's testimony is not at issue because Haiti has submitted his affidavit in this case. In its motion to compel, however, Crown does not claim that it has been unable to agree with plaintiff on a mutually convenient time and place. Accordingly, the motion to compel Delatour's deposition is denied.

As to the testimony Jean-Poix, Crown asserts that he has attested to personal knowledge of the facts of this case. The court can locate no such affidavit. The motion to compel his deposition is therefore denied.

## IV. PLAINTIFF'S MOTIONS TO COMPEL DISCOVERY AND FOR PROTECTIVE ORDER

■ Plaintiff moved on June 8 for a protective order with respect to interrogatories propounded by Crown and Williamson (DE 121). Defendants have not responded. Under Local General Rule 10(I)(7) of the Southern District of Florida, prior to filing a motion for protective order or a motion to compel,

> counsel for the moving party shall confer with counsel for the opposing party and file with the Clerk at the time of filing the motion, a statement certifying that he has conferred with counsel for the opposing party in a good faith effort to resolve by agreement the issues raised and that counsel have been unable to do so.

Because the instant motion contains no such certificate of counsel, it is fatally defective and therefore is denied.

Plaintiff also moved on May 28 to compel Crown and Williamson to answer plaintiff's interrogatories and to produce documents (DE 117). Defendants responded that they have complied with the requested discovery

**850**

(DE 125). Because plaintiff has not replied, the court must assume that the motion is moot and therefore must be denied.

As an additional matter, defendants' response (DE 125) alleges that plaintiff did not make a good-faith attempt to resolve this discovery dispute. Defendants claim that they told plaintiff's counsel they would comply with the requested discovery but would need more time to respond. The court does not take lightly the failure of any attorney to endeavor to resolve discovery problems in accordance with the letter and spirit of Local General Rule 10(I)(7). Hereafter in this litigation, the court will consider imposing sanctions for noncompliance with this rule or where the court finds that counsel did not make a good faith effort to resolve discovery disputes.

## V. CONCLUSION

It is therefore

ORDERED and ADJUDGED that defendant Couach's motion for summary judgment filed April 13, 1987 (DE 74) is denied. It is further

ORDERED and ADJUDGED that defendant Crown's motion to compel filed April 21, 1987 (DE 94) is granted in part and denied in part as follows:

1. If Crown demonstrates that it is unable without undue hardship to obtain the susbstantial equivalent of these materials by other means, Crown may propound depositions upon written questions to Jedd Ringel, Gary Dumas, and David Pollack provided the questions are particular and do not call for mental impressions, conclusions, opinions, or legal theories. The parties are expected to reach an accommodation on this matter among themselves and to petition the court only as a last resort.

2. Leave of court is granted to depose Pierre Sam. The court enjoins the parties to agree upon a time and place to take his deposition.

3. The motion to compel the depositions of Leslie Delatour and Antonio Jean-Poix is denied.

It is further

ORDERED and ADJUDGED that plaintiff's motion for protective order filed June 8, 1987 (DE 121) is denied. It is further

ORDERED and ADJUDGED that plaintiff's motion to compel filed May 28, 1987 (DE 117) is denied as moot.