**CURAFLEX HEALTH SERVICES, INC., Plaintiff,**

**v.**

**Larry M. BRUNI, M.D., P.C., et al., Defendants.**

**Civ. A. No. 92–2866 PLF.**

United States District Court, District of Columbia.

Feb. 27, 1995.

Allen V. Farber, Green, Stewart & Farber, P.C., Washington, DC, for plaintiff.

Steven M. Schneebaum, Patton, Boggs & Blow, Washington, DC, for defendants.

*OPINION*

FRIEDMAN, District Judge.

This case came before the Court for argument on January 20, 1995, on Defendants' Motion for Summary Judgment On Counts I, II, III, VII, VIII, IX and X of the Amended Complaint. The Court finds that there are

no genuine disputes as to any facts material to the disposition of these counts and that defendants are entitled to judgment as a matter of law.

## I. BACKGROUND

Curaflex Health Services, Inc. provides home infusion care to patients with AIDS and those who are HIV-positive. Defendant Larry M. Bruni, M.D., P.C. ("Bruni P.C.") is a medical practice primarily serving such patients, and defendant Larry M. Bruni, M.D., a licensed physician, is its primary shareholder, as well as a director and officer of Bruni P.C. Medical Office Management Systems, Inc. ("MOMS") is a medical software supplier. Defendant Gary P. Whaley is a shareholder, director and president of MOMS and an officer of Bruni P.C.

Curaflex and Bruni P.C. entered into a Product and Service Supply Agreement ("PSSA") in May of 1992, whereby Curaflex agreed to provide products and services to patients of Bruni P.C. Under the Agreement, Bruni P.C. was to compensate Curaflex 70% of the amount billed for Curaflex services, regardless of whether the patients paid Bruni P.C. for the services.

Curaflex provided services to patients of Bruni P.C., which generated accounts receivable. Some patients and third-party payors deposited funds in payment of the accounts receivable into a lock box at Riggs Bank, as provided for in the Agreement. Other patients and third-party payors paid funds directly to Bruni P.C. and did not deposit them into the lock box.

Curaflex alleges that Bruni P.C. violated the Agreement by failing to notify Curaflex of each patient and third-party payor remittance paid directly to Bruni P.C. It also alleges that Bruni P.C. diverted the payments it directly received from patients and some of the lock box funds to MOMS to pay payroll and other expenses of MOMS. After Curaflex filed this lawsuit, Bruni P.C. stopped paying Curaflex any of the money from the lock box and failed to pay Curaflex other monies it was owed.

Curaflex brought this suit against Dr. Bruni, Bruni P.C., MOMS, and Michael Anestos, Bruni P.C.'s general counsel. Curaflex subsequently amended its complaint to add a count and a fifth party, Gary P. Whaley. Counts I, II and III of the Amended Complaint allege conversion; Count IV alleges breach of contract; Count V alleges tortious interference with contract; Count VI alleges breach of contract on a promissory note (against Bruni P.C. only); Count VII alleges breach of contract on the guarantee of the promissory note (against Dr. Bruni only); Count VII alleges conspiracy to convert; Count IX alleges aiding and abetting conversion; and Count X alleges tortious interference with prospective economic and business relations. On November 18, 1994, the Court granted Defendant Michael Anestos' motion for summary judgment and dismissed him from this case. On the same day, the Court granted Plaintiff's Motion for Partial Summary Judgment on Count VI of the Amended Complaint and entered judgment against Bruni P.C., the only defendant named in that count.

Defendants now seek summary judgment on the counts alleging conversion, conspiracy to convert, and aiding and abetting conversion (Counts I, II, III, VIII, and IX), as well as on Counts VII and X. Plaintiff has informed defendants and the Court that it shall not pursue Counts II and III; they have been rendered moot because they seek injunctive relief that is no longer available. Therefore, plaintiff does not oppose defendants' motion on these counts. Plaintiff has also indicated that it no longer contests the grant of summary judgment to defendant Dr. Bruni on Count VII because Dr. Bruni's obligations under the guarantee were to be released if Bruni P.C. received payments of more than $1,300,000 as the result of services Curaflex rendered under the PSSA, and defendants have now provided evidence that Bruni P.C. in fact received payments in excess of that amount. Plaintiff has also abandoned Count X. Thus, the Court need consider defendants' motion only as it pertains to Counts I, VIII and IX, all of which are based on a conversion theory.

## II. DISCUSSION

### A. Summary Judgment Standard

Under Rule 56, Fed.R.Civ.P., summary judgment shall be granted if the pleadings,

depositions, answers to interrogatories, admissions on file and affidavits show that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. at 2513; *see also Washington Post Co. v. U.S. Dept. of Health and Human Services*, 865 F.2d 320, 325 (D.C.Cir.1989). But the non-moving party's opposition must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242 (D.C.Cir.1987). If the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11.

"In cases in which the dispositive issue involves the construction of a contract, summary judgment may be appropriate if the provisions of the contract are unambiguous." *Davis v. Chevy Chase Financial Ltd.*, 667 F.2d 160, 169 (D.C.Cir.1981); *see America First Inv. Corp. v. Goland*, 925 F.2d 1518, 1520 (D.C.Cir.1991); *Farmland Industries, Inc. v. Grain Bd. of Iraq*, 904 F.2d 732, 735–36 (D.C.Cir.1990). Furthermore, it is settled that whether a contract term is ambiguous is a question to be determined by the court. *Carey Canada, Inc. v. California Union Ins. Co.*, 708 F.Supp. 1, 4 (D.D.C.1989).

B. *The Contract Is Unambiguous And Does Not Create A Property Interest In Curaflex For Which It May Maintain A Claim For Conversion*

■ Conversion is "any unlawful exercise of ownership, dominion or control over the personal property of another in denial or repudiation of his rights thereto." *Duggan v. Keto*, 554 A.2d 1126, 1137 (D.C.1989); *see also O'Callaghan v. District of Columbia*, 741 F.Supp. 273, 279–80 (D.D.C.1990). One may be liable for conversion to a person who is in possession of property or who has the right to immediate possession of the property. *See* Restatement (Second) of Torts, §§ 224A, 225. Money can be the subject of a conversion claim only if the plaintiff has the right to a specific identifiable fund of money. *Scherer v. Laborers' Intern. Union of North America*, 746 F.Supp. 73, 84 (N.D.Fla.1988). A cause of action for conversion, however, may not be maintained to enforce a mere obligation to pay money. *Scherer v. Laborers' Intern. Union of North America*, 746 F.Supp. at 84; *Republic of Haiti v. Crown Charters, Inc.*, 667 F.Supp. 839, 845 (S.D.Fla. 1987).

■ Curaflex argues that the PSSA required Bruni P.C. to segregate from its general revenues all monies it received for services Curaflex rendered, to deposit the segregated funds into a separate designated lock box account and to transfer the lock box funds to Curaflex. After receiving the funds, Curaflex was to divide the funds between Bruni P.C. and itself, 70% going to Curaflex and the remainder to Bruni P.C. Plaintiff therefore contends that the PSSA clearly and unambiguously created in Curaflex a property right to a specific and identifiable fund of money: the money Bruni P.C. deposited in the lock box, as well as those funds that were paid directly to Bruni P.C. that Bruni P.C. was obligated to deposit into the lock box but did not. According to plaintiff, when Bruni P.C. failed to place the funds that it directly received into the lock box and failed to transfer the lock box funds to Curaflex, it converted Curaflex's property. The Court disagrees with plaintiff's reading of the PSSA and finds that plaintiff had a contract right under the PSSA, but no property right, to the monies owed to Curaflex by Bruni P.C. for the products and services provided.

The Product and Service Supply Agreement set up a purchaser-supplier contractual relationship whereby Curaflex was to provide

services to patients of Bruni P.C. and Bruni P.C. in turn was to pay Curaflex for the services. Section 5.1 of the PSSA establishes Bruni P.C.'s contractual obligation to pay Curaflex 70% of the revenues billed for the services provided by Curaflex. It provides that Bruni P.C. must bill all patients and must pay Curaflex all amounts due Curaflex, whether or not Bruni P.C. is reimbursed by the patient or a third party. PSSA ¶ 5.1. It further provides that Bruni P.C. has an obligation to pay Curaflex within 90 days of the invoice date irrespective of implementation of the lock box agreement set forth in the following paragraph. *Id.*

Section 5.2 of the PSSA sets up a mechanism by which patients and third party payors were to pay Bruni P.C. for Curaflex services and describes how the payments were to be distributed between Bruni P.C. and Curaflex. PSSA ¶ 5.2. Section 5.2 states:

> At Curaflex's expense, Curaflex and Purchaser [Bruni P.C.] will arrange with a Curaflex designated bank for payments due Purchaser to be sent (pursuant to Purchaser's [Bruni P.C.'s] written instructions to Patients and third party payors) to a designated lock box. Payments will be deposited by the bank into a bank collection account in the name of the Purchaser [Bruni P.C.]. Purchaser [Bruni P.C.] will instruct the bank to transfer all proceeds from the Purchaser's [Bruni P.C.'s] account to a Curaflex bank account for distribution. Curaflex will retain any fees due Curaflex from Purchaser from such proceeds pursuant to paragraph 5.1 and will transfer all funds collected in excess of Curaflex's fee to Purchaser ...

*Id.* Section 5.3 of the PSSA requires Bruni P.C. to notify Curaflex within 10 days of any patient or third-party payor remittance received directly by Bruni P.C. PSSA ¶ 5.3. Section 5.5 provides that Bruni P.C. is to pay to Curaflex a monthly service charge on past due amounts that patients paid into the lock box. PSSA ¶ 5.5.

Contrary to Curaflex's contention, the heart of the PSSA was the contractual obligation of Bruni P.C. to pay Curaflex for products and services. That obligation is found in Paragraph 5.1. Paragraph 5.2 merely sets up a mechanism by which Bruni P.C. could meet its contractual obligation to Curaflex. That paragraph provided that Bruni P.C. was obligated to instruct patients and third party payors in writing to send payments for products and services to a designated lock box. (Apparently some patients and third party payors followed these instructions and some did not.) But the lock box or bank collection account was "in the name of the Purchaser," Bruni P.C., not in the name of Curaflex. PSSA ¶ 5.2. Furthermore, the bank was only obligated to transfer proceeds from Bruni P.C.'s lock box account to Curaflex's account on the instructions of Bruni P.C. *Id.* By the terms of the PSSA, then, Bruni P.C., not Curaflex, remained in control of the funds and of the lock box in which they were deposited, and the bank could only act on instructions from Bruni P.C.

While the monies in the lock box were a specific, identifiable fund, Curaflex had no immediate right to possession or control of the fund. Curaflex's ability to gain possession or control of the funds in the lock box was wholly contingent on Bruni P.C.'s meeting its obligation under Paragraph 5.2 of the PSSA to instruct the bank to transfer the funds from the lock box to a separate Curaflex bank account. Thus, when Bruni P.C. failed to transfer the funds from the lock box to a Curaflex account, or to instruct the bank to do so, it did not convert Curaflex's property. Rather, it breached its contractual obligation under the PSSA to order a transfer of funds. As a matter of law, then, plaintiff's conversion claims may not be maintained.

Plaintiff's arguments are even weaker with respect to the monies not placed in the lock box but which Bruni P.C. received directly from patients and third party payors and allegedly was supposed to put in the lock box but did not. First, the PSSA nowhere requires that the funds patients and third party payors paid directly to Bruni P.C. be segregated and placed in the lock box. Paragraph 5.3 of the PSSA requires only that Bruni P.C. notify Curaflex of the receipt of such funds, and Paragraph 5.5 requires Bruni P.C. to pay Curaflex these funds and a monthly

service charge on all past due amounts. Since Paragraph 5.1 required Bruni P.C. to pay Curaflex for all services provided "whether or not Purchaser [Bruni P.C.] is reimbursed by the Patient or third party," the provisions regarding the lock box mechanism, the notification of remittance and the service charge for past due amounts all work together to assure that Bruni P.C. meets its contractual obligation to Curaflex. But neither Paragraph 5.2 or any of these other contract provisions created any rights in Curaflex to immediate possession or control of a specific and identifiable fund of money. Because the PSSA did not require Bruni P.C. to place directly received payments into the lock box, and because Bruni P.C. did not place such payments into the lock box, they were not specific funds in which Curaflex could have a property right or the right to immediate possession. *See United States Fidelity & Guaranty Co. v. Bass,* 619 F.2d 1057, 1060 (5th Cir.1980). Furthermore, as discussed above, the PSSA makes plain that Curaflex would still have lacked a property right in them even if these funds had been placed in the lock box.

### C. Extrinsic Evidence Does Not Show That Curaflex Had A Property Right In The PSSA Proceeds

In divining the meaning of contract terms, the Court is not bound by the four corners of the agreement. The party moving for summary judgment and the party opposing summary judgment may submit "extrinsic evidence that gives color to the words of the agreement or otherwise reveals the intent of the contracting parties...." *UMWA 1974 Pension v. Pittston Co.,* 984 F.2d 469, 473 (D.C.Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 3040, 125 L.Ed.2d 726 (1993). Although the Court finds that the terms of the PSSA are unambiguous and that reference to extrinsic evidence is unnecessary in this case, it also finds that the result would not change even if it did examine such evidence because plaintiff's interpretation of the contract is not reasonable even in view of the evidence plaintiff has provided.

Curaflex argues that even if the terms of the PSSA provide that only Bruni P.C. had authority to order the bank to transfer funds from the lock box to Curaflex, extrinsic evidence shows that the parties *intended* that Curaflex would have the authority to order the transfer of the lock box funds to a separate Curaflex account. It says that the parties' intentions were thwarted only because Riggs Bank, with whom the lock box was opened, was unwilling to give Curaflex this authority despite the parties' intentions. Curaflex also argues that the parties tried to set up a monthly automatic transfer from the lock box to a Curaflex account, thus eliminating the need to have Bruni P.C. request the transfers, but that Riggs Bank did not permit this either. Curaflex maintains that if the transfer had been automatic or if Curaflex had the authority to order transfer of the funds, as the parties intended, then Curaflex's ability to possess and control the funds in the lock box would not have been subject to Bruni P.C.'s obligation to order the bank to transfer the funds. Finally, Curaflex maintains that the parties intended that even the funds received directly by Bruni P.C. from patients and third party payors were to be deposited into the lock box for transfer to Curaflex.

The extrinsic evidence on which Curaflex primarily relies is a July 15, 1992, letter to Riggs Bank from Michael H. Anestos, general counsel to Bruni P.C. Exhibit 6 to Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Pl.Opp.").[1] The letter from Mr. Anestos to Riggs instructs Riggs to "sweep" the lock box account into a designated Curaflex account at the end of each month without awaiting any additional instructions (Pl.Opp.Exh. 6), but the testimony of both Mr. Anestos and Mr. Whaley was that Riggs Bank would not accede to that blanket instruction automatically at the end of each month. Instead, the bank required that representatives of Bruni P.C. advise it monthly by telephone when Bruni P.C. wanted Riggs to sweep the Bruni P.C. account and move the money to the Curaflex account. *See*

---

1.  Curaflex also relies on excerpts from the depositions of Michael Anestos (Pl.Opp.Exh. 2), Ralph B. Strong, Vice President–Finance of Curaflex (Pl.Opp.Exh. 3), Gary P. Whaley (Pl.Opp.Exh. 4), and Larry M. Bruni, M.D. (Pl.Opp.Exh. 5).

Pl.Opp.Exh. 2 at 126; Pl.Opp.Exh. 4 at 263–64. Because Riggs required a monthly direction from Bruni P.C. representatives, Bruni P.C. and its agents had the unilateral right to control the money in the lock box and to determine where and when it would be transferred. But the same would have been true even if Riggs had accepted the blanket instructions in Mr. Anestos' July 15, 1992, letter, because those instructions could have been changed by Mr. Anestos, a representative of Bruni P.C., at any time. Thus, the extrinsic evidence provided by Curaflex leaves plaintiff exactly where it was under the unambiguous terms of the contract: Curaflex had only a contractual right to the money in the lock box and not a right to any possession of a specific identifiable fund of money; Bruni P.C. retained possession or control until it ordered the transfer of the funds to Curaflex.

As for the deposition testimony of Messrs. Whaley and Strong, it purportedly reflects the "understanding" of each of these individuals as to what the PSSA meant and/or what the parties intended when they entered into the PSSA. *See* Pl.Opp.Exh. 3 at 40, 68; Pl.Opp.Exh. 4 at 254–55, 257, 262–63, 265. Where the four corners of a contract are clear and unambiguous, however, there is no need to inquire as to the after-the-fact views of the parties as to what they originally intended or what they "understood" the document to mean. Furthermore, where the "understanding" of the parties is at odds with the terms of the contract itself, the contract controls. *See Community Heating & Plumbing Co. v. Kelso,* 987 F.2d 1575, 1578 (Fed.Cir.1993). In any event, while Mr. Strong said that he recalled that the PSSA was to have been set up so that Curaflex "would essentially have ownership" and "rights to the cash" from the day the money was deposited in the lock box account (Pl. Opp.Exh. 3 at 40), he also stated that he did not recall any discussion about the lock box being set up solely in the name of Curaflex (Pl.Opp.Exh. 3 at 68). Mr. Anestos testified unequivocally that "the lock box was always to be made in the name of Bruni P.C.," Pl.Exh. 2 at 125, and Mr. Whaley testified that under the PSSA Bruni P.C. had control of the lock box and was to transfer funds from the lock box to Curaflex's account on a monthly basis but only "if there was money due and owing." Pl.Opp.Exh. 4 at 269.

In sum, while the extrinsic evidence is not all consistent, in the end it supports defendants' view that its obligations to plaintiff were contractual and nothing more. Curaflex did not control a specific, identifiable fund of money or have the right immediately to obtain the fund. Curaflex's right to receive payment always was subject to Bruni P.C.'s contractual obligation to forward the directly received payments or to deposit them to the lock box and to request Riggs to transfer the payments deposited into the lock box to Curaflex. The situation here is like any other contract where one who provides goods and services is entitled to be paid by the purchaser, an obligation enforceable by a suit in contract, not in conversion. In this case, the lock box arrangement was simply one manner through which the purchaser, Bruni P.C., was to pay its supplier, Curaflex. Plaintiff's action is one to recover on a breached contractual obligation. The conversion claims must be dismissed.

Accordingly, defendants' motion for summary judgment is GRANTED.

SO ORDERED.