**SHENANDOAH ASSOCIATES LIMITED PARTNERSHIP et al., Plaintiffs,**

v.

**Bardyl D. TIRANA, Esq., Defendant.**

No. Civ.A.00–3083(RMU).

United States District Court,
District of Columbia.

Aug. 15, 2001.

Alan I. Baron, Kevin B. Bedell, Dorsey & Whitney, LLP, Washington, DC, for Plaintiffs.

Richard Wayne Driscoll, Eccleston & Wolf, Washington, DC, David Drake Hudgins, Sean Charles Edward McDonough, Hudgins Law Firm, PC, Alexandria, VA, Alvin Ira Frederick, Eccleston & Wolf, PC, Baltimore, MD, for Defendant.

### MEMORANDUM OPINION

URBINA, District Judge.

**Granting in Part and Denying in Part the Defendant's Motion to Dismiss; Denying the Defendant's Motion to Transfer Venue**

## I. INTRODUCTION

This matter comes before the court upon defendant Bardyl Tirana's motion to dismiss for failure to state a claim and motion to transfer venue. The plaintiffs, Shenandoah Associates Limited Partnership, Jefferson House Associates Limited Partnership, and Leesburg Manor Associates Limited Partnership ("the partnerships"), seek relief under four separate counts, each of which the defendant contests as insufficient to state a claim. The defendant also contends that the plaintiffs, as limited partnerships, are precluded from bringing their claims because they do not have the capacity to sue in their own name pursuant to Federal Rule of Civil Procedure Rule 17(b), and because they lack privity with the defendant. Lastly, the defendant contends that venue is improper in the District of Columbia, and moves to transfer this case to a federal district court in Virginia or Maryland.

After careful consideration of the parties' submissions and the applicable law, the court concludes that the plaintiffs meet the requirements of Rule 17(b) and thus can sue in their own names. The plaintiffs do not need to show that they are in privity with the defendant. As to count I,

tortious interference with contractual rights, the plaintiffs have stated a claim on which relief can be granted. With respect to count II, conspiracy to convert the plaintiffs' property, the plaintiffs' claim is a mere restatement of count I. On count III, unjust enrichment, the plaintiffs have failed to establish, as a matter of law, that they conferred a benefit on the defendant. As to count IV, creation of a constructive trust, the plaintiffs are not entitled to this equitable remedy. Finally, for the reasons stated below, the court denies the defendant's motion to transfer venue.

## II. BACKGROUND

This case arises out of a contract dispute between three limited partnerships registered in Virginia, and the Community Management Corporation of Maryland ("CMC"), represented by defendant Tirana. Each limited-partnership plaintiff owns, as its only asset, one apartment building in Virginia. *See* Compl. ¶ 8. Between 1982 and 1989, each of the three partnerships entered into an exclusive management agreement with CMC. *See id.* ¶¶ 9–11. The agreements required CMC to deposit rents and other funds into a separate, government-insured account designated in the names of the partnerships' respective house-operating accounts. *See id.* ¶ 13. The agreements also specified the precise uses of the house-operating accounts and required the management agent to turn over all accounts, trust funds and records immediately, but in no event more then thirty days after the termination of the agreements. *See id.* ¶¶ 13–16. Two of the agreements required CMC to comply with the U.S. Department of Housing and Urban Development Regulatory Agreement that all funds collected by CMC be kept in trust, separate and apart from CMC's other funds. *See id.* ¶ 15.

In late 1997, the three partnerships terminated their agreements with CMC, effective January 1998. *See id.* ¶ 17. In accordance with the terms of the contracts, the partnerships then sought to retrieve the funds and relevant records from all the trusts and accounts. *See id.* At this time, according to the plaintiffs, CMC was in poor financial shape and owed the defendant about $300,000 in legal fees. *See id.* ¶ 25. Allegedly acting on the advice of its counsel, Mr. Tirana, CMC transferred the partnerships' funds from the escrow account into its own general fund and used the general fund to pay Mr. Tirana's outstanding legal fees. *See id.* ¶¶ 26–53.

The plaintiffs allege three counts of wrongdoing by the defendant: (1) tortious interference with the plaintiffs' contractual rights; (2) conspiracy to convert the plaintiffs' property; and (3) unjust enrichment through acceptance of payment from CMC's general fund. The plaintiffs also ask the court to create a constructive trust to prevent the defendant from being unjustly enriched by the plaintiffs' funds. In his motion to dismiss, the defendant contends that the plaintiffs, as limited partnerships, lack the capacity to sue in their own name and lack privity with the defendant. In addition, the defendant argues that each of the four counts pled in the complaint fails to state a claim on which relief can be granted. Finally, the defendant moves to transfer venue to a federal district court in Maryland or Virginia pursuant to 28 U.S.C. § 1404(a).

## III. ANALYSIS

### A. Legal Standard

A motion to dismiss for failure to state a claim tests not whether the plaintiffs will prevail on the merits, but whether the complaint has properly stated a claim.

*See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); Fed. R.Civ.P. 12(b)(6). The court may dismiss a complaint for failure to state a claim "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *See Hishon v. Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). In deciding such motions, the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in the plaintiffs' favor. *See Antonelli v. Sheahan,* 81 F.3d 1422, 1427 (7th Cir.1996) (citing *Arazie v. Mullane,* 2 F.3d 1456, 1465 (7th Cir.1993)). However, the court need not accept as true the plaintiff's legal conclusions. *See Taylor v. FDIC,* 132 F.3d 753, 762 (D.C.Cir.1997).

### B. Conflict of Laws

Because the basis for jurisdiction in this case is diversity,[1] *see* 28 U.S.C. § 1332(a), the court must determine which choice-of-law principles to apply. This court has held that "[i]n a diversity action, this Court sitting in the District of Columbia is obligated under *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), to apply the choice of law rules prevailing in this jurisdiction." *Dowd v. Calabrese,* 589 F.Supp. 1206, 1210 (D.D.C.1984) (applying *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)).

The District of Columbia's choice-of-law principles utilize the " 'governmental interests' analysis, under which [the court] evaluate[s] the governmental policies underlying the applicable laws and determine[s] which jurisdiction's policy would be more advanced by the application of its law to the facts of the case under review." *District of Columbia v. Coleman,*

---

1. The plaintiffs are limited partnerships organized under the laws of Virginia. The defendant is a resident of the District of Columbia. *See* Compl. ¶¶ 1–4.

667 A.2d 811, 816 (D.C.1995) (citing *Hercules & Co. v. Shama Restaurant*, 566 A.2d 31, 40–41 (D.C.1989)). As part of this analysis, the court also may look to factors contained within the Restatement (Second) of Conflicts of Laws § 145, including: "(a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship is centered." *See id.* (citing *Estrada v. Potomac Elec. Power Co.*, 488 A.2d 1359, 1361 n. 2 (D.C.1985)).

■ In this case, the weight of the governmental interests lies with the Commonwealth of Virginia. All three partnerships, as well as the physical assets of those partnerships, are located in Virginia. The contracts in dispute were written and executed pursuant to Virginia law. Virginia, therefore, has a significant interest in seeing its substantive law applied in this case.

■ By contrast, with respect to the plaintiffs' capacity to sue under Rule 17(b), the district court must use the law of the jurisdiction in which the district court sits, in this case the District of Columbia. *See* Fed.R.Civ.P. 17(b) ("... capacity to sue or be sued shall be determined by the law of the state in which the district court is held ...").

### C. Capacity of a Limited Partnership to Sue *In Eo Nomine*

The law governing partnerships is contained within Title 41 of the D.C.Code. Title 41 contains three chapters: Chapter 1A, the Uniform Partnership Act of 1996 ("UPA"); Chapter 3, the Dissolution and Payment of Debts; and Chapter 4, the Uniform Limited Partnership Act of 1987 ("ULPA"). The plaintiffs contend that they have capacity to sue because Chapter 1A allows for "a partnership to sue or be sued in the name of the partnership." *See*

Pl.'s Reply at 4 (citing D.C.Code § 41–153.7(a)). As a preliminary matter, however, the court must determine whether section 41–153.7(a) applies to the plaintiffs.

■ Under Chapter 1A § 41–151.1(7), a partnership is an "association of two or more persons to carry on as co-owners of a business for profit formed under § 41–152.2, a predecessor law, or comparable law of another jurisdiction." D.C.Code § 41–151.1(7). Section 41–152.2(a) states that "except as provided for in subsection (b) of this section, the association of two or more persons to carry on as co-owners of a business for profit forms a partnership, whether or not the persons intend to form a partnership." D.C.Code § 41–152.2(a).

By its terms, this general rule encompasses limited partnerships such as the plaintiffs. Section 41–152.2(b), however, excepts certain associations from the definition of "partnership." Specifically, it excepts those associations that were "formed under a statute other than this chapter [Chapter 1A], a predecessor statute, or a *comparable* statute of another jurisdiction is not a partnership under this statute." D.C.Code § 41–152.2(b) (emphasis added). Since the plaintiffs plead themselves as limited partnerships formed under Virginia law, they are associations "formed under a statute other than" D.C.Code Title 41 Chapter 1A or a predecessor statute. The question, then, is whether the Virginia statute that governs limited partnerships is "comparable" to Chapter 1A of the D.C.Code.

The laws governing partnerships in the District of Columbia and Virginia are almost identical. In 1996, each jurisdiction adopted, with minor variations, the provisions of the UPA. In both the District and Virginia, the UPA governs general partnerships and limited-liability partnerships. However, neither Chapter 1A of the D.C.Code nor Chapter 2.2 of the Vir-

ginia Statutes mentions the term "limited partnerships." Indeed, both jurisdictions retain separate and distinct provisions governing "limited partnerships." · This suggests that the legislatures intended to keep the rules controlling partnerships separate according to the type of partnership. Therefore, the Virginia limited-partnership statute under which the plaintiffs formed their business association is not "comparable" to the D.C. partnership statute, D.C.Code § 41–151.1(7).

Holding that the Virginia and D.C. statutes are not "comparable," however, does not end the court's inquiry. Section 41–408 of the D.C.Code states that "in any case not provided for in this chapter [the ULPA], the provisions of Chapter 1 [Uniform Partnerships] of this title shall govern." D.C.Code § 41–408. Because the ULPA is silent as to whether partnerships can sue *in eo nomine*, section 41–408 allows the court· to apply the appropriate provisions of Chapter 1 to limited partnerships. Thus, the legislature must have intended that section 41–408 serve as a gap-filling provision, catching all possibilities not expressly covered by the ULPA.

The legislative history of D.C.Code Chapters 1 and 1A indicates that Chapter 1 was repealed and replaced by Chapter 1A in 1997. This change renders the reference to Chapter 1 in section 41–408 erroneous and inconsistent with the legislative intent. Indeed, any other construction of section 41–408 would render it meaningless because the Chapter referenced as the gap-filler has been repealed and replaced by Chapter 1A. It is a well-established principle of statutory construction that "words may be supplied in a statute in order to give it effect, to avoid repugnancy or inconsistency with legislative intent and . . . where omission makes the statute absurd, meaningless, irrational or unreasonable." Norman J. Singer, Sutherland Statutory Construction § 47.38 (5th

ed.1991). Thus, supplying the proper provisions to section 41–408 harmonizes the statute with the remainder of the D.C.Code. *See id.* § 53.04. ("uniform laws are commonly interpreted in light of provisions contained in other uniform laws.")

Since the D.C. and Virginia limited-partnerships laws are similar, the court can look to the Virginia ULPA for guidance as to the proper construction of the D.C. provision. Virginia's ULPA provides that "[i]n any case not provided for in this chapter the provisions of the Uniform Partnership Act (§ 50–73.79 *et seq.*) shall govern." Va.Code § 50–73.79. The similarities between the two provisions provide ample justification for construing the D.C. statute to include Chapter 1A, thereby allowing· the plaintiffs, pursuant to section 41–153.7, to sue in their own names. This construction is consistent with the principle that "harmony and consistency are positive values in a legal system because they serve the interests of impartiality and minimize arbitrariness." Singer § 53.01. The court therefore determines that the plaintiffs can sue in the names of the limited partnerships, thus allowing them to meet the threshold requirement for capacity to sue under Rule 17(b).

### D. · Privity Requirement

■ The defendant argues that the complaint must be dismissed because the plaintiffs lack privity with the defendant. *See* Mot. to Dismiss at 4. The defendant argues that "[e]ach claim brought by the Plaintiffs rests on the foundation that the defendant's advice to his client was negligent." *Id.* at 5. Therefore, according to the defendant, the complaint violates Virginia's "long-standing policy against permitting third-parties to sue for professional malpractice." *Id.* The plaintiffs respond that their claim is not a legal-malpractice claim but rather one for tortious interfer-

ence with their contractual rights. *See* Pls.' Opp'n at 7. Thus, the plaintiffs contend that the lack of privity between themselves and the defendant is irrelevant. *See id.*

The present case is factually similar to *Duggin v. Adams,* 234 Va. 221, 360 S.E.2d 832, 836 (1987). *Duggin* involved a land-sale contract between Mr. Williams and Mr. Duggin. Mr. Adams, the defendant, was the attorney for Mr. Williams. During the course of the dealings, Mr. Adams, "in his role as Williams' attorney," learned the details and amount of the fees Mr. Duggin was to receive and allegedly acted to "fraudulently mislead and intimidate Duggin into giving up his contractual rights." *See id.,* 360 S.E.2d at 835. The Virginia Supreme Court held that "these allegations ... state a prima facie case of intentional and improper interference with Duggin's contractual rights." *Id.*

The court reaches the same conclusion in this case. Given the alleged debt that CMC owed the defendant, the plaintiffs may be able to prove that, like Mr. Adams, the defendant used information, obtained in his role as CMC's attorney, in a way that induced CMC to breach their contract and thereby interfered with the plaintiffs' contractual rights. While privity may be a requirement for legal-malpractice claims, the defendants cite no cases that apply the same requirement to tortious-interference claims. Therefore, the court determines that privity between the parties is not necessary and will allow the plaintiffs' count I claim to survive.

## E. Tortious Interference with Contract (Count I)

■ In count I, the plaintiffs allege that the defendant tortiously interfered with their contractual agreements with CMC. *See* Compl. ¶¶ 35–40. In the case of a terminable-at-will contract, there are four elements to a prima-facie case of tortious interference:

(1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) the use of *"improper methods"* in the intentional interference causing a termination of the contract; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *See Hilb, Rogal and Hamilton Co. of Richmond (HRH) v. DePew,* [247 Va.240,] 440 S.E.2d 918, 921 (Va.1994) (emphasis added).

■ The Virginia Supreme Court has clarified the prima facie requirements for tortious interference of terminable-at-will contracts, holding that "to present a prima facie case of tortious interference [a plaintiff] must allege and prove not only an intentional interference that *caused the termination* ... but also that the defendant employed 'improper methods.'" *Duggin v. Adams,* 234 Va. 221, 360 S.E.2d 832, 836 (1987) (emphasis added); *see also Perk v. Vector Resources Group Ltd.,* 253 Va. 310, 485 S.E.2d 140, 142–43 (1997). In *Perk,* the Virginia Supreme Court also held that "the improper methods must have occurred prior to the termination of the contract in order to constitute the cause of the termination." *Perk,* 485 S.E.2d at 143 (citing *HRH,* 440 S.E.2d at 922).

■ In assessing whether the plaintiffs have satisfied the improper-methods standard, the court notes a difference between the present contracts and those involved in previous cases. Unlike the previous cases, notably *Perk,* the present contracts placed obligations on CMC after termination, and it was these obligations with which the defendant allegedly interfered. In *Perk,* no such post-termination contractual obligations existed. *See Perk,* 485 S.E.2d at

143. In this case, the provision requiring return of the funds to the partnerships became effective only after the contract was terminated. The defendant's alleged interference induced CMC to breach its contractual obligations, thereby interfering with the partnerships' contractual rights and causing damages for which the defendant could be held liable. *See* Compl. ¶ 38.

With respect to the post-termination obligations, the present case is analogous to *HRH v. DePew*, 247 Va. 240, 440 S.E.2d 918 (1994). In that case, the defendant an employee of plaintiff HRH, signed an employment contract that contained a non-compete clause. *See id.* at 919. After terminating his employment contract, the defendant violated his fiduciary duty to HRH by approaching clients of HRH and soliciting their business. *See id.* The Virginia court held that even though the defendant terminated his employment contract, he was still obligated to abide by the non-compete provision and his failure to do so constituted an "improper method." *See id.* at 921. Similarly, by allegedly interfering with the continuing obligations that CMC owed to the plaintiffs, the defendant took actions that amounted to improper methods. Accordingly, the court determines that Count I states a claim on which relief may be granted.

### F. Conspiracy to Convert the Plaintiffs' Property (Count II)

 The defendant moves to dismiss count II for failure to state a claim of conspiracy to convert the plaintiffs' property. Since the underlying substantive action for the conspiracy is the tort of conversion, the plaintiffs must first plead the elements of conversion. The Supreme Court of Virginia has defined conversion as "the wrongful assumption or exercise of the right of ownership over goods or chattels belonging to another in denial of or inconsistent with the owner's rights." *Economopoulos v. Kolaitis*, 259 Va. 806, 528 S.E.2d 714, 719 (2000) (quoting *Universal C.I.T. Credit Corp. v. Kaplan*, 198 Va. 67, 92 S.E.2d 359, 365 (1956)). The elements necessary to maintain an action for conversion are "a property interest in and [an entitlement] to the immediate possession of the item alleged to have been wrongfully converted." *Id.*, 528 S.E.2d 714 at 719 (quoting *United Leasing Corp. v. Thrift Ins. Corp.*, 247 Va. 299, 440 S.E.2d 902, 906 (1994)).

 In the present case, the plaintiffs allege that the funds in the operating accounts, as well as the funds held in trust, belong to them. *See* Compl. ¶ 42. The plaintiffs also allege that CMC wrongfully converted these funds at the defendant's instructions and that the plaintiffs are entitled to immediate possession. *See id.* ¶¶ 43–46. The defendant moves to dismiss these claims on two grounds: first, that the property at issue here is money and conversion applies only to tangible property; and second, that CMC's, and therefore the defendant's, obligations were contractual in nature and cannot be the basis for a claim of conversion. *See* Mot. to Dismiss at 10–11.

 Under Virginia law, "a cause of action for conversion applies only to tangible property." *United Leasing Corp.*, 440 S.E.2d at 906. Virginia case law also indicates, however, that claims for conversion can extend to intangible property rights arising from or merged with documents such as stock certificates, promissory notes, checks or bonds. *See id.* at 906 (citation omitted); *accord Simon v. Reilly*, 321 Ill. 431, 151 N.E. 884, 885–86 (1926); *Lawson v. Commonwealth Land Title Ins. Co.*, 69 Md.App. 476, 518 A.2d 174, 176 (Spec.App.1986); *Pierpoint v. Hoyt*, 260 N.Y. 26, 182 N.E. 235, 235–36 (1932); Restatement (Second) of Torts § 242 cmt. e. (1965). There is no precedent, however,

for allowing conversion claims for *undocumented* intangible property rights.

Even in cases extending the reach of conversion claims, the common thread—attachment of the intangible rights to some form of tangible negotiable instruments—is not present in this case. To the contrary, the plaintiffs lack any negotiable instrument on which to attach intangible property rights. Unlike stock certificates, promissory notes or bonds, all of which carry expectation rights, the operating accounts and trust funds in the present suit hold no independent value. The funds' express purpose, according to the management contracts, was to cover operating expenses and management fees. *See* Compl., Ex. 1 ¶ 16(a–c), Ex. 3 ¶ 14(a–c), Ex. 5 ¶ N(1–4). Therefore, the plaintiffs did not have any tangible rights in the funds, which consequently cannot be the subjects of a claim of conversion.

Without the negotiable instrument as a link, the Virginia courts have been reluctant to extend conversion claims to intangible property rights. Accordingly, the court determines that the Virginia courts would not extend the tort of conversion to intangible property rights such as the ones asserted in this case. *See United Leasing Corp. v. Thrift Ins. Corp.*, 247 Va. 299, 440 S.E.2d 902, 906 (1994) (holding that conversion does not extend to undocumented intangible property rights); *Economopoulos*, 528 S.E.2d at 719 (refusing to extend the conversion claim to treasury bills).

Even assuming *arguendo* that the funds in the operating accounts are "tangible property," the contracts in this case provide that:

The agent [CMC] will collect, when due, all rents, charges and other amounts receivable on the Owner's account in connection with the management and operation of the Project. Such receipts . . . will be deposited in an account, separate from all other accounts and funds, with a bank whose deposits are insured by the Federal Deposit Insurance Corporation (FDIC). *This account will be carried in the Agent's name* and designated of record as "[Name of Apartment Complex] House Operating Account."

Compl., Ex. 1 ¶ 11 (emphasis added). The requirement that the accounts be carried in the agent's (CMC's) name grants property rights to CMC and not to the plaintiffs. Therefore, the funds that are deposited in the accounts technically belong to CMC and not to the plaintiffs because the funds are in CMC's possession. What the contract creates for the plaintiffs, then, is not a property right, but a contractual obligation right to demand that CMC pay the plaintiffs from the accounts based on the agreement.

In *Curaflex Health Services, Inc. v. Bruni*, 877 F.Supp. 30 (D.D.C.1995), as in the present case, the parties had an agreement whereby Curaflex would supply products to patients of Bruni, P.C., and Bruni would then compensate Curaflex 70% of the amount due for Curaflex's services. *See id.* at 30. Certain money, however, was not deposited into the Curaflex account, but rather, into the Bruni, P.C. lockbox. The court held that transfer of these funds from the lockbox to a Curaflex account depended on Bruni's instruction to the bank. *See id.* at 33. Therefore, the court concluded that Curaflex's ability to gain possession or control of the funds was contingent on the defendant meeting its contractual obligations. *See id.* at 33.

In the present case, the plaintiffs' management agreements required that the money be deposited into an account in the agents' name, and that payments from the account be made pursuant to the clause in the contracts entitled "Disbursements from Operating Account." *See* Compl., Ex. 1 ¶ 16(a–c), Ex. 3 ¶ 14(a–c), Ex. 5 ¶ N(1–4). These provisions forced CMC,

as the management agent, to consent to the payment or transfer of any money from the operating accounts. Thus, even if excess funds existed that rightfully belonged to the plaintiff partnerships, CMC, as the possessor of the funds, would have to authorize the transfer for the plaintiffs to gain possession of the money. *See Curaflex*, 877 F.Supp. at 33.

Therefore, consistent with *Curaflex*, the plaintiffs do not possess a property right with respect to the funds, but rather a right to receive payment of any funds in excess of CMC's operating costs and management fees. This right is a contractual obligation not enforceable by a suit in conversion under Virginia law. Because the plaintiffs have failed to state a claim for conversion of funds, the court need not reach the conspiracy element of count II. Count II is merely an extension of the tortious-interference-of-contract claim asserted in count I. Therefore, the court grants the defendant's motion to dismiss count II.

### G. Unjust Enrichment (Count III)

■ Virginia recognizes a quasi-contract cause of action to recover for unjust enrichment. *See Kern v. Freed Co.*, 224 Va. 678, 299 S.E.2d 363 (1983). The claim rests "'upon the doctrine that a man shall not be allowed to enrich himself unjustly at the expense of another.'" *Id.*, 299 S.E.2d at 365 (quoting *Rinehart v. Pirkey*, 126 Va. 346, 101 S.E. 353 (1919)). To properly plead a claim for unjust enrichment, the plaintiffs must show three elements:

(1) a benefit conferred on the defendant by the plaintiff; (2) knowledge on the part of the defendant of the conferring of the benefit; and (3) acceptance or retention of the benefit by the defendant in circumstances that render it inequitable for the defendant to retain the benefit without paying for its value.

*Nossen v. Hoy*, 750 F.Supp. 740, 744 (E.D.Va.1990). The defendant argues that the plaintiffs have not established the first prong because the defendant never received a benefit from the plaintiffs. *See* Mot. to Dismiss at 13. The plaintiffs respond that the defendant received $215,000 in funds that the defendant knew derived from accounts created to manage the apartment complexes. *See* Compl. ¶ 53.

■ For the plaintiffs to prevail on a claim of unjust enrichment, they must possess a property right in the funds. For the reasons articulated with respect to count II (conspiracy to convert plaintiffs' property), the plaintiffs do not possess a property right in those funds. Rather, they have an expectation that CMC would fulfill its obligations under the contract. Similarly, the defendant also had an expectation that CMC would pay him for his legal services. The facts demonstrate that CMC and the defendant had an attorney-client relationship for which the defendant had a reasonable expectation of compensation. *See* Compl. ¶¶ 19, 25. Compensation for the services was paid from the "general operating account" of CMC. *See id.* ¶ 33.

The only way for the plaintiffs to succeed on a claim of unjust enrichment is to prove that the money paid to the defendant actually belonged to the plaintiffs. CMC was in possession and control of the funds at all times; thus, at best the plaintiffs can prove that, based on their contractual obligations with CMC, they had a expectation interest in the money. Without being able to plead control over the funds, the plaintiffs cannot prove that they conferred a benefit on the defendant. Thus, the plaintiffs fail to meet the first prong of an unjust-enrichment claim as defined by Virginia law. *See generally Nossen v. Hoy*, 750 F.Supp. 740, 744–45 (E.D.Va.1990); *see also Kern v. Freed Co. Inc.*, 224 Va. 678, 299 S.E.2d 363, 364

(1983) (holding that the burden of loss was not allowed to be shifted to an innocent party who was simply receiving the benefits to which he was entitled under an existing contract.).

In this case, while the court takes no position on the defendant's "innocence," the facts do not demonstrate that the defendant was unjustly enriched simply by receiving payment from CMC's general operating account, for services rendered under an existing agreement. *See Kern,* 299 S.E.2d at 365 (holding that the defendant was not unjustly enriched because he had contracted to receive his benefits from others). The dispute with respect to the funds lies between CMC and the plaintiff partnerships, not between the partnerships and the defendant. Therefore, the court grants the defendant's motion to dismiss count III.

### H. Creation of a Constructive Trust (Count IV)

 Under Virginia law, constructive trusts are "trusts which the law creates independently of the intention of the parties to prevent fraud or injustice." *Leonard v. Counts,* 221 Va. 582, 272 S.E.2d 190, 195 (1980) (citing *Porter v. Shaffer,* 147 Va. 921, 133 S.E. 614, 616 (1926)). To sustain a claim for a constructive trust, the plaintiffs must show that the defendant took and retained possession of property that he ought not in good conscience retain, by fraud, duress, or other questionable or unconscionable means. *See Pair v. Rook,* 195 Va. 196, 77 S.E.2d 395, 404 (1953) (citing 54 Am.Jur., Trusts § 219).

 Like express trusts, constructive trusts must have a definite subject matter. Constructive trusts cannot "be based on mere possession of property or breach of contract where no ownership of property is involved." George T. Bogart, Trusts and Trustees § 471 (2d ed.1987). If the plaintiffs cannot claim property or

ownership rights in the funds allegedly obtained by the defendant, the court cannot impose a constructive trust. To impose such a trust would be inequitable to the defendant, who performed the services for which he received payment. Therefore, because the defendant did not gain or retain title to definite property belonging to the plaintiffs, the court grants the defendant's motion to dismiss count IV.

### I. Motion to Transfer Venue

 The defendant moves to transfer venue pursuant to Title 28 U.S.C. § 1404. Section 1404(a) states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." As movants, the defendants bear the burden of establishing that the transfer is proper. *See Reiffin v. Microsoft Corp.,* 104 F.Supp.2d 48, 50 (D.D.C. 2000) (Urbina, J.) (citing *Air Line Pilots Ass'n v. Eastern Air Lines,* 672 F.Supp. 525, 526 (D.D.C.1987)); *International Bhd. of Painters v. Best Painting and Sandblasting Co.,* 621 F.Supp. 906, 907 (D.D.C. 1985). In addition, section 1404(a) vests discretion in the district court to adjudicate motions for transfer of venue according to an "individualized, case-by-case consideration of convenience and fairness." *See Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 27, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (citing *Van Dusen v. Barrack,* 376 U.S. 612, 622, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)); *see, e.g., Kafack v. Primerica Life Ins. Co.,* 934 F.Supp. 3, 5 (D.D.C.1996).

 The threshold question under section 1404(a) is whether the action could have been brought in the proposed transferee district at the time the complaint was filed. In the present case, the defendants have proposed the Eastern District of Virginia or the Southern District of Maryland.

The court determines that venue is proper only in the Eastern District of Virginia because, under the facts alleged, one of the contracts was for an apartment building located in the Eastern District, and all of the contracts were created and enforced under Virginia law. Title 28 U.S.C. § 1391(a)(2) requires that for venue to be proper, "a substantial part of the events or omissions giving rise to the claim" must have occurred in the district. *See id.* None of the alleged harms occurred within Maryland or had any association with Maryland law. Thus, according to the statute, venue is only proper in the Eastern District of Virginia.

 In considering whether transfer is appropriate, the court must consider both public-and private-interest factors, including:

the convenience of the witnesses of plaintiff and defendant; ease of access to sources of proof; availability of compulsory process to compel the attendance of unwilling witnesses; the amount of expense for willing witnesses; the relative congestion of the calendars of the potential transferee and transferor courts; and other practical aspects of expeditiously and conveniently conducting a trial.

*SEC v. Page Airways Inc.,* 464 F.Supp. 461, 463 (D.D.C.1978) (citing *Chicago Rock Island & Pacific R.R. v. Igoe,* 220 F.2d 299, 304 (7th Cir.1955)); *accord Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir.1986).

 Since the defendant raises no private-interest factors with respect to the Eastern District of Virginia, the court will address only the public-interest factors raised by the defendant. The defendant argues that because the properties at issue are located in Virginia and Virginia law will apply, the case is best heard by a court in Virginia. *See* Def.'s Reply at 5. The court agrees with the defendant and,

because jurisdiction here is founded on diversity, the court applies Virginia law to the instant case. The defendant also argues that the docket in Virginia is significantly less clogged than this court's docket. *See id.* at 5. In this instance, however, the defendant has not submitted any evidence showing that the calendar of one court is more meaningfully congested than the other. Therefore, the court finds the defendant's argument unpersuasive.

## IV. CONCLUSION

For the reasons set forth above, the court denies the defendant's motion to dismiss with respect to count I and grants his motion to dismiss counts II, III, and IV. The court also denies the defendant's motion to transfer venue. An Order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously executed and issued this 14th day of August 2001.